[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 581 
It was admitted on the trial that the plaintiff's intestate came to his death by the negligence of Allison, a telegrapher and train dispatcher in the employ of the defendant; and the question litigated was, whether the defendant was in any way responsible for his conduct. The deceased was also in the employ of the defendant as engineer upon a train which was brought in collision by such negligence. The responsibility of the defendant was sought to be established by proof that Allison, although of good habits and competent for his position when employed, had become addicted to the use of intoxicating drinks to such an extent as to render him unfit for the position which he occupied, and of which Fisk, the defendant's superintendent, and Caligan his assistant, one or both of them had notice, and that the mistake which caused the accident, was committed while *Page 583 
Allison was in a state of intoxication. The general principle applicable to this class of actions, and the rule of liability of the principal for injuries to employes by the negligence of co-employes, have been so fully considered by this court in the recent cases of Laning v. N.Y. Central Railroad Co.,* andFlike v. Boston Albany Railroad Co.[8224] (this case was not decided until after the present one), that it is unnecessary to advert to them in this case. There is no doubt that Fisk, as superintendent, with power to employ and discharge subordinates, including Allison, and Caligan as his assistant, occupied the position of principal in respect to the duty of employing and retaining such only as had good habits and were competent to properly discharge the duties of their respective positions. It is equally well settled that if proper persons are employed who afterward become incompetent or unfit, from bad habits, to discharge their duties, and this is brought to the knowledge or notice of the principal or its managing officers who have power to act in the premises, a failure or neglect promptly to discharge them will render the principal liable for any injury caused thereby.
The motion for a nonsuit was properly denied. The evidence tended to establish each of the requisites necessary to maintain the action; or at least it was capable of a construction which would justify a finding in favor of the plaintiff. Evidence was given that Allison was in the habit of drinking daily, many times, and had become somewhat dissipated; and that he was intoxicated on the night of the accident. The evidence of knowledge, or notice to Caligan or Fisk was not conclusive, but facts were proved from which the jury might infer such knowledge. They were accustomed to daily intercourse with Allison, saw him in drinking places, and were present on some occasions when he drank; and on one occasion Fisk testified that he reprimanded Allison for drinking; and on another occasion a witness thinks that he heard Fisk say that "he must quit this," referring to his *Page 584 
drinking habits. It is quite evident that both Fisk and Caligan had an opportunity to know the fact from actual observation; and we think the jury might infer that they did know it, although they each testified that they did not recollect of seeing him drink or of seeing him when he was intoxicated. It was for the jury to determine the credibility of witnesses and the weight and construction to be given to the evidence. If there was any evidence to justify a verdict, the motion for a nonsuit was properly denied — and we think there was.
It is objected that the declaration of Fisk, above referred to, was inadmissible, and its admission is claimed to be error. As evidence of the fact of the habit of drinking it was not admissible, within the general rule, that the declarations of an agent will not bind the principal unless made at the time of doing some act within the scope of the agency, and which in fact constitutes a part of the act itself. (17 N.Y., 131; 28 id., 153.) But we think this evidence was competent to prove notice to Fisk. Other evidence was produced that Allison was in the habit of drinking to excess, and the remark, if it had reference to such habit, was pertinent to establish that he knew it. It would be competent to prove that a third person told him of it; and it is more satisfactory to establish the fact that he admitted such knowledge at the time. It is evidence of a material fact. An admission afterward that he had known the fact would stand upon a different footing. It is not error to receive evidence, if competent, for any purpose.
It is also objected that the court permitted Fisk himself to testify that on one occasion he told Allison that he had heard that he (Allison) had been off on a spree, drinking; that the latter did not deny it, and the witness reprimanded him for it. The ruling of the court may be sustained upon the ground that this transaction was within the agency of Fisk; and the declaration accompanied an act in the discharge of his duty. He had the power of employment, discharge and supervision of Allison as one *Page 585 
of the employes of the defendant; and upon being informed of his delinquency and its cause, it was his duty to investigate the matter and apply such remedy as the circumstances demanded; and what he did and said in discharging that duty were competent. It related to the question in controversy whether there was negligence in retaining Allison. Conceding that his retention by Fisk, after being informed of a single dereliction of duty was justifiable, as it might be, greater vigilance in observing the conduct of Allison, afterward, might be expected if not demanded; and the evidence would be competent upon the question whether he did observe it.
The other exceptions relate to the charge and refusals to charge as requested. The instructions to the jury were in the main correct, and the views expressed have received the sanction of this court. It is urged, however, that the learned judged erred in his charge as to the duty of a principal after employing competent persons to exercise care to discover whether they became incompetent or fall into bad habits. The part of the charge complained of is as follows: "But, if after a competent and proper person is employed for such a duty, if his habits become such that it is unsafe to trust him any longer in that capacity, the company are bound to use, through their proper officers, such reasonable care and diligence in ascertaining what the man is, after he is employed, as they would be in his original employment." To this there was an exception. We think this rule of diligence is too broad, and cannot be sustained. The general rule is, that notice or knowledge of incompetency is necessary to charge the principal with the duty of acting. In employing subordinates the principal must exercise great care, and is required to institute affirmative inquiries to ascertain their character and qualifications, and negligence in this respect will create a liability; but after suitable persons have been employed, there is not the same reason for exacting such a high degree of diligence. Good character and proper qualifications once possessed may be presumed to continue, and I *Page 586 
see no reason why a principal may not rely upon that presumption as to these personal qualities until he has notice of a change or knowledge of such facts as would be deemed equivalent to notice, or at least such as would put a reasonable man upon inquiry. The charge permitted the jury without restriction or limit to determine what particular supervision or watchfulness was necessary to exonerate the defendant from the charge of negligence. They might require periodical investigations, or an efficient detective system. They were at liberty to adopt any rule, and might adopt one which would practically make the defendant a guarantor of the correctness of every act of its employes. We have been referred to no authority for such a doctrine, and it would be manifestly unjust to adopt it. We were referred to some cases of injury from a defect in machinery or implements furnished to a servant by a master, where it is said that knowledge of the defect must be brought home to the master, or proof given that he was ignorant of the same through his own negligence or want of care. (Wright v. N.Y.C.R.R. Co.,25 N Y, 562, and cases cited.) There is a distinction in the two cases. Implements and machinery are certain to fail, and become defective from natural causes, and frequent examination and measures of precaution are necessary to prevent it. Hence, continued and constant vigilance may be required, but, in such a case, either the facts upon which negligence is predicated must be shown, or actual notice or knowledge. If it should appear, for example, that a passenger car was used for a considerable period, without any examination of the wheels, or other parts of the running gear, and an injury should occur by reason of a defect which such examination would or might detect, the omission would be regarded as negligence. This would result from the known liability of the article to become defective, and the consequent necessity of preventive care to avoid it. These reasons are not applicable to the case of an employe. If competent when employed, additional experience would naturally render him more so, and while his habits might change *Page 587 
for the worse, there is no such depravity in human nature as in law requires special vigilance on the part of the employer to prevent it.
It is not quite clear, from the whole charge, how far the learned judge intended to go in the direction indicated. During a colloquy between the judge and the counsel upon the point, the former used language tending partially to qualify the import of that quoted, but this portion of the charge was not withdrawn, and the jury might have acted upon it. To obviate an erroneous instruction upon a material point, it must be withdrawn in such explicit terms as to preclude the inference that the jury might have been influenced by it.
There was no error in refusing to charge the jury that if they believed the testimony of Fisk and Caligan to be true they should find for the defendant. This is not ordinarily a proper form of making a request. The facts upon which the instruction is asked should be hypothetically stated and left to the jury to decide from the evidence. The request in this case required the judge to determine what the testimony was. It was the province of the jury to construe it, and determine its weight.
For the error in the charge the judgment must be reversed, and a new trial granted, costs to abide the event.
All concur.
Judgment reversed.
* 49 N.Y., 521.
[8224] 53 N.Y., 549.