# AMMUND TONNESEN, APPELLANT, *v.* P. SANFORD ROSS AND JOSEPH B. SANFORD, RESPONDENTS.*

*Negligence — when a question for the jury.*

In an action brought to recover damages alleged to have resulted to the plaintiff, who was employed on a scow which received mud from a dredging machine owned by the defendants, it appeared that after the plaintiff had been at work a few days for the defendants, one Delamater, the captain in charge of the dredging machine, swung the bucket over and struck a shaft which the plaintiff was turning with a wrench, as a result of which the plaintiff was seriously injured. The evidence tended to establish the fact that the captain was drunk at the time; that the plaintiff had seen him drunk on three occasions during his employment of eight days; that the captain always ran the dredging machine, and that the plaintiff did not tell the defendants of the fact that the captain was addicted to drink, nor did he leave their employment on that account.

No direct proof was given that the defendants knew of the habits of Delamater, although it appeared that the defendants' superintendent was at Weehawken where the dredge was at work every other day, and was there on the day on which the accident happened.

*Held,* that it was a question for the jury, under the circumstances of this case, whether the defendants or their superintendent had knowledge of the habits of Delamater, and also whether the plaintiff was guilty of omissions which precluded his recovery.

APPEAL by the plaintiff Ammund Tonneson from a judgment of the Supreme Court, entered in the office of the clerk of the county of Kings on the 27th day of May, 1890, in favor of the defendants, dismissing the plaintiff's complaint on the merits.

The action was brought to recover damages alleged to have been sustained by the plaintiff through the alleged negligence, and while

---

*The following dissenting opinion was written by Judge PRATT both in the above-entitled case of *Ammund Tonnesen* v. *P. Sanford Ross and Joseph B. Sanford,* and also, and more particularly, in a case of similar character of *John Thompson* v. *The Same Defendants,* in which latter case there was an appeal by the defendants from a judgment of the Supreme Court, entered in the office of the clerk of the county of Kings on the 19th of April, 1890, in favor of the plaintiff, after a trial at the Kings County Circuit before the court and a jury, at which a verdict was rendered in favor of the plaintiff for the sum of $1,900; and also from an order denying a motion for a new trial made upon the minutes of the court.

*Robert D. Benedict,* for the defendants, appellants.

*J. Edward Swanstrom,* for the plaintiff, respondent.

he was in the employ, of the defendants, and was tried at the Kings County Circuit before the court and a jury.

*J. Edward Swanstrom,* for the appellant.

*Robert D. Benedict,* for the respondents.

BARNARD, P. J.:

The defendants were contractors engaged in dredging the bottom of the Hudson river near Weehawken. The superintendent was one Vincent, and the captain in charge of the dredging-machine was one Delamater. The plaintiff was an employee of the defendants, working on the scow which received the mud from the dredging-machine. The dredging was done by steam, and the buckets were handled from the mud machine or dredger. The plaintiff had been at work but a few days for the defendants, from the 21st to the 29th of September, 1888. On the 29th of September, 1888, while the plaintiff was at work on the scow, the captain, Delamater, who controlled the same from the pilot-house of the dredge, swung the bucket over and struck the shaft which the plaintiff was turning with a wrench. The wrench was made thereby to spring up so that it struck the plaintiff and seriously injured him, paralyzing his arm and breaking his jaw. The evidence tended to establish that the captain was drunk at the time. The plaintiff had seen him drunk on three occasions during the employment of eight days. The captain always ran the machine. The plaintiff did not tell the defendants of the fact that the captain was addicted to drink, and did not leave the employment on that account. It is easily to be inferred from the evidence that but for the recklessness caused by strong

---

PRATT, J. (dissenting):

The verdict for plaintiff went upon the sole ground that defendants employed in their business an overseer or "captain," who was by his habits of intoxication rendered an improper person to be intrusted with such work, and that defendants were chargeable with notice of his incompetence.

In answer to this it is shown by plaintiff's testimony that he was fully aware of the captain's incompetence, and continued thereafter to work under him without objection or complaint.

It appears that plaintiff's brother worked under the captain two years before the plaintiff entered on the employment, and he testifies that during these two years the captain was an habitual drunkard.

drink the accident would not have happened. The captain had full view of the situation and could regulate the bucket with certainty and precision if his judgment was not affected by his condition. Proof was given tending to show that the captain was in an intoxicated condition as often as two or three times a week, and this was his usual condition for nearly two years before the accident, during all the time he worked for the defendants. The defendants' superintendent, Vincent, was at Weehawken every other day, and was there the day on which the accident happened. No direct proof was given that the defendants knew of the habits of Delamater. The plaintiff was nonsuited. The rule of liability in the case is, that the master was bound to use reasonable care, to provide and employ competent and skillful servants, and to discharge on notice or knowledge, or the means of knowledge, any who fail to continue such. (*Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y., 521.)

The case of *Chapman* v. *Erie Railroad* (55 N. Y., 579) does not change this rule. The point decided in that case was, that a master did not owe the same care in finding out bad habits after employment as he did in the original employment. There was proof in the case that the defendants' division superintendent knew of the drunkenness of the employee, and the court held that the action was made out so far as to go to the jury. The superintendent was so frequently at the dredge during its use by Delamater, and the habits were proven to be so settled and continuous that it was a question for the jury to pass upon as to his knowledge or means of knowledge.

Negligence is a question of fact usually, and whether the plaintiff

---

Plaintiff testifies that, before he went there, he had often been told that the captain was drunk, and that during his term of service and before the accident he had himself been a witness to the captain's intoxication. Speaking of the captain, he says, "I saw him like a crazy man pretty near every day;. * * * he looks drunk pretty near of every day," and goes on to say that, before he went there, his brother many a time told him the captain was drunk.

Upon this testimony it must be held that the plaintiff took the hazard of working under an intoxicated man. The motion for nonsuit should have been granted.

The judgment must be reversed and new trial granted, with costs to appellant.

Judgment and order denying new trial affirmed, with costs.

was guilty of omissions which permitted his recovery, assuming the master's negligence to be proven, was also a question for the jury. The character of the act, the circumstances of the case and the condition of the parties were things to be considered in determining the question of contributory negligence. (*Thurber* v. *Harlem, B. M. and F. R. R. Co.*, 60 N. Y., 331.)

The judgment should, therefore, be reversed and a new trial granted, costs to abide the event.

DYKMAN, J., concurred; PRATT, J., dissenting.

Judgment dismissing complaint reversed and new trial granted, costs to abide event.