60   19
128a  659

_____

JAMES POWERS, AS ADMINISTRATOR OF EDWARD POWERS, DECEASED, APPELLANT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, RESPONDENT.

*Negligence — a mere scintilla of proof indicating negligence does not require the submission of the case to the jury — duty of the master to furnish proper implements.*

In an action against a railroad corporation, arising out of its alleged negligence occasioning the death of a fireman, it appeared that the deceased was standing upon a lap-board between the engine and tender when the pin, coupling them, broke, the engine and tender separated, and the deceased was thrown under the tender and killed. The pin had been furnished to the railroad company at the same time with the engine by a reputable firm, and had been inspected by a competent person eight days before the accident, and, beyond the fact of its being slightly worn, outward examination showed no defect. A hidden flaw existed in the pin, and experts, in view of its condition after the accident, testified that the iron of which it was composed was not of the best quality.

*Held*, that no case was made for the jury.

That the doctrine that if there is a *scintilla* of evidence, indicating negligence upon the part of the party defending an action, the case must be submitted to the jury has no existence in the State of New York.

That the duty of the master to furnish for the use of the servant suitable and proper tools and machinery, and to keep the same in repair, is not an absolute one, but is satisfied by the exercise of reasonable care and prudence upon the part of the master.

APPEAL by the plaintiff James Powers, as administrator of the goods, chattels and credits of Edward Powers, deceased, from a judgment, entered, on the 17th day of March, 1890, in the clerk's office of Onondaga county, dismissing the complaint in this action, with costs, at the close of the evidence, after a trial at the Onondaga Circuit before the court and a jury.

*Louis Marshall*, for the appellant.

*M. M. Waters*, for the respondent.

MARTIN, J.:

The plaintiff's intestate was killed on the 6th day of December, 1886, about one mile east of defendant's yard in East Syracuse. This action, to recover damages for his death, was based on the theory that it was caused by the defendant's negligence.

The decedent, at the time of his death, was in the defendant's employ as a fireman on one of its engines, known as No. 172. At the time of the accident the engine was moving a freight train, which consisted of about thirty loaded cars. It was a very large engine, used only for moving heavy freight trains. When the accident occurred the engineer was at his post and the decedent was upon the tender, or upon the bridge or lap-board between the engine and tender, shoveling coal into the fire-box of the engine.

While the train was passing along the track, without any apparent cause or previous unusual movement of the engine or train, the engine separated from the tender and the decedent fell to the track, was struck by the tender and instantly killed. The night was very cold and the ground was covered with snow. The engine was coupled to the tender and held in place by a pin or king-bolt about two and one-eighth inches in diameter, which was the usual size used for that purpose. The accident was caused by the breaking of the pin or king-bolt. The pin was slightly worn, but not sufficiently to render its use unsafe or improper. After it was broken flaws could be discovered at the point where the break occurred. They were, however, beneath the surface and could not have been

seen before the accident. There were also stay or guard chains connecting the engine and tender. The hook of one and the link of the other were broken.

The locomotive and tender were manufactured by the Dixon Locomotive Works, and purchased in July, 1884. They were then new. The Dixon Locomotive Works is a reputable manufacturer of that kind of machinery. Eight days before the accident the engine and tender were in the defendant's shops, and the pin and chains were carefully inspected by a competent inspector in the defendant's employ, who discovered no flaw or defect in the pin, except that it was slightly worn.

It is contended by the appellant: 1. That the pin was made of an inferior quality of iron, which might have been discovered before the accident if it had been properly inspected by a competent inspector. 2. That the hook to which the stay-chain was attached was of inferior iron, the broken link defectively welded and the chains too long, and that a person properly inspecting them would have discovered these defects.

The undisputed proof was that the hook was of the usual size, and that there was nothing about it which would challenge any competent man's attention as showing any flaw or weakness. The evidence was also to the effect that the chains were of the usual size and the link which was broken was of tough iron, and that for aught that appeared before it was broken it was a good weld. It was also shown that these chains were of the usual length used upon that class of engines. While there was proof that shorter chains were used upon passenger engines, we find no evidence that upon this kind of engines any shorter chains were used. Indeed, the evidence tends to show that chains of the length used were required upon engines of that size and build.

That the purpose of these stay chains was to maintain the connection between the engine and tender, when a pin of at least five times their strength was broken, can hardly be supposed without impeaching the mechanical ability or integrity of every reputable manufacturer of such engines in this country or elsewhere. That there may have been instances where, under certain circumstances, such pins have broken and the stay-chains have prevented a separation of the engine from the tender, does not tend to show that such was their purpose, nor that it was the defendant's duty to provide

chains of sufficient strength to prevent a separation of the engine from the tender in case the pin should break.

We can find nothing in the evidence which would have justified the court in submitting the question of the defendant's negligence, by reason of the insufficiency of the hook and chains or of the insufficient inspection thereof, to the jury, or that would have justified the jury in finding any negligence in that respect which was the proximate cause of the injury complained of.

This leaves for consideration the question whether the evidence was sufficient to require the submission to the jury of the question whether the defendant was negligent in not providing a proper pin or in not properly inspecting it. There was no evidence that the defendant was negligent in purchasing this engine and tender, nor that it was not so far perfect when purchased that no defect in the pin could have been discovered by the most careful inspection. Nor was there any evidence that the defendant had any knowledge of the alleged defect in the pin.

As we have already seen, the evidence discloses that but eight days before the accident an employe of the defendant, who was a competent machinist, carefully examined this pin and discovered no flaw or defect in it. The only proof that tends in any way to show that this inspection was not complete and proper was the evidence of experts called by the plaintiff who testified that the iron of which the pin was constructed was not of the best quality. This was the condition as discovered by an examination of the pin at the point where the break occurred after it was broken. But when asked whether an intelligent inspector from an inspection of the pin would have discovered the condition mentioned, the reply was: " The only thing I could discover would be the small spot below the crack and the laminated appearance of the pin above." The same witness testified that he could not say the crack came to the surface of the pin so that it was observable before the pin was worn by use. Indeed, an examination of the evidence upon this subject discloses nothing which tends to show that any crack, or other indication of weakness or insufficiency of the pin, existed before the accident, that could have been discovered by the most minute and critical inspection that could have been made even by a scientific expert, except the speculations and theories of experts who expressed the

opinion that some defect might have been discovered. The pin was produced upon the argument. An examination of it shows that if there was any defect in it which was discernible before it was broken, it must have been very minute, and would have required an extremely close and unusual examination to have discovered it. Here we have, at most, the opinion of experts, based on an examination of the pin after it was broken, that some slight flaws or defects might have been discovered before the accident, against the evidence that the pin was thoroughly and carefully inspected by a competent machinist a short time before and no defects discovered. That the defects complained of could not have been discovered by the usual and ordinary inspection given to an engine is testified to by the plaintiff's own witness.

While it must be admitted that negligence is generally a question for the jury, still it is only when the facts would authorize a jury to find it that it should be submitted to them. (*Sutton* v. *N. Y. C. and H. R. R. R. Co.*, 66 N. Y., 243, 249.)

We think the evidence failed to establish the omission of any duty by the defendant, which it owed to the plaintiff's intestate, which caused the injury complained of. We do not think the evidence was such as would have justified the jury in finding that the defendant had omitted to exercise reasonable care and prudence in furnishing appliances for the intestate's use or in keeping them in proper repair. That there was a mere theory from which a jury might have surmised that the defendant had omitted some duty it should have performed was not enough. If the proof of a fact is so preponderating that a verdict against it would be set aside by the court as contrary to the evidence, then it is the duty of the court to direct a verdict. It was said in *Baulec* v. *New York and Harlem Railroad Company* (59 N. Y., 356, 366), by Judge ALLEN, that 'it is not enough to authorize the submission of a question as one of fact to the jury that there is some evidence. A scintilla of evidence or a mere surmise that there may have been negligence on the part of the defendants would not justify the judge in leaving the case to the jury,' quoting from WILLIAMS, J., in *Toomey* v. *Railway Company* (3 C. B. [N. S.], 146). In *Hyatt* v. *Johnston* (91 Penn. St., 200) Justice STERRETT says: 'Since the scintilla doctrine has been exploded, both in England and in this country, the preliminary

question of law for the court is, not whether there is literally no evidence or a mere scintilla, but whether there is any that ought reasonably to satisfy the jury that the fact sought to be proved is established.' (Citing *Ryder* v. *Wombwell*, L. R., 4 Exch., 39). The rule held by the Supreme Court of the United States is expressed by Mr. Justice CLIFFORD in *Improvement Company* v. *Munson* (14 Wall., 442), as follows: 'Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what was called a scintilla of evidence in support of a case, the judge was bound to leave it to the jury; but recent decisions of high authority have established a more reasonable rule that in every case before the evidence is left to the jury there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof rests.'" This is the language of RUGER, Ch. J., in *Dwight* v. *Germania Life Insurance Company* (103 N. Y., 358).

The duty of a master to furnish safe, suitable and proper tools, machinery and implements for the use of his servant in the performance of his work, and to keep them in proper care, is not an absolute one. It is satisfied by the exercise of reasonable care and prudence on the part of the master. (*Probst* v. *Delamater*, 100 N. Y., 266; *Burke* v. *Witherbee*, 98 id., 562; *Stringham* v. *Hilton*, 111 id., 188.)

Therefore, to entitle the plaintiff to recover in this action, he was bound to prove that the defendant had omitted to exercise reasonable care in furnishing the decedent with safe and proper tools and appliances, to be used by him in the performance of his work, or that it was negligent in not keeping them in a proper state of repair. If the defendant was negligent, the burden of establishing that fact was upon the plaintiff. Negligence must be proved. It is not to be presumed. Where a servant enters upon an employment, from its nature necessarily hazardous, he assumes the usual risks and perils of the service, and also those that are known to him or which are apparent to ordinary observation. (*Williams* v. *D., L. and W. R. R. Co.*, 39 Hun, 432, and cases cited in opinion.) An employee

in the service of a railroad corporation assumes the risks and dangers incident to the business in which he is engaged, and while the company is bound to exercise reasonable care to furnish suitable and safe machinery and appliances for his use, having done so, it is not liable for an injury resulting from their breaking or failure, unless it is shown that the corporation has been guilty of negligence in regard thereto. (*De Graff* v. *N. Y. C. and H. R. R. R. Co.,* 76 N. Y., 125.) In the language of ALLEN, J., in *Wright* v. *New York Central Railroad Company* (25 N. Y., 562), "If the injury arises from a defect or insufficiency in the machinery or implements furnished to the servant by the master, knowledge of the defect or insufficiency must be brought home to the master, or proof given that he was ignorant of the same through his own negligence and want of proper care." The same doctrine is held in *Chapman* v. *Erie Railway Company* (55 N. Y., 579); *Baulec* v. *New York and Harlem Railroad Company* (59 id., 356); *Edwards* v. *New York and Harlem Railroad Company* (98 id., 245); *Kelly* v. *New York and Sea Beach Railroad Company* (109 id., 44).

A master's liability to his servant for injuries received in the course of his employment is based upon the personal negligence of the employer, and the evidence must establish personal fault on his part, or what is equivalent thereto, to justify a verdict, and he is entitled to the benefit of the presumption that he has performed his duty until the contrary appears. (*Cahill* v. *Hilton,* 106 N. Y., 512, 517.) The submission of an action for negligence to a jury is not authorized where a plaintiff's evidence is equally consistent with the absence as with the existence of negligence, as in such a case the evidence fails to establish negligence. (*Baulec* v. *N. Y. and Harlem R. R. Co., supra; Hayes* v. *Forty-second St, etc., R. R. Co.,* 97 N. Y., 259.)

We think the principles of the authorities cited fully sustain our conclusion that the evidence in this case was insufficient to justify the submission to the jury of the question of the defendant's negligence, and that the court properly nonsuited the plaintiff.

The judgment should be affirmed, with costs.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment affirmed, with costs.