### THE ANTONIO ZAMBRANA.

#### OIEN v. THE ANTONIO ZAMBRANA.

(District Court, E. D. New York.   August 8, 1898.)

MASTER AND SERVANT—INCOMPETENT FELLOW SERVANT—ASSUMED RISK.
    Where a seaman, who has made several voyages with a mate whom he knows to be addicted to intemperance, at times incapacitating him for his duties, undertakes a new voyage, and, as the ship is leaving the wharf, is injured by a negligent order of the mate, induced by the latter's intoxication, which the seaman has not reported to the master, but has attempted to conceal from him, such seaman cannot recover against the ship for such injury.

This is a libel by a seaman for a personal injury.

Grout, Jenks, Mayer & Hyde, for libelant.
Ward, Hayden & Satterlee, for claimant.

THOMAS, District Judge. Upon a dark night, the mate of a ship advised the master thereof that the bow line holding the ship to a wharf in the city of New York had been thrown off the cleat on such wharf, whereupon the master directed the ship to be moved astern. The line, in fact, had not been thrown off by the person on the wharf who attempted the same; and the libelant, an able seaman, who had cast the turns of the line off the bitts on the ship, and had given it slack to enable it to be cast off the cleat, was in an unexplained way caught by the line running out, and grievously injured. The mate had been intoxicated during the afternoon, and had been taken in charge by the libelant, who endeavored to overcome his intoxication before the arrival of the master, who was absent, and did not appear until shortly before the accident, at which time the mate had in such measure recovered from his insobriety that it was not necessarily noticeable. The libelant contends that the injury was caused by the negligence of the mate; that his intoxication contributed to the negligence; that the master was negligent in continuing the mate in service, and committing to his supervision the work of casting off the line.

There are certain basic rules of law governing the relations of master and servant, which may be stated generally as follows: The master must use reasonable care to secure competent servants, and if, after such due care, he employ a servant, the master cannot be charged with injury to a co-servant arising from the incompetency of the servant so employed, unless the master knew, or in the exercise of ordinary care should have known, of such incompetency. Chapman v. Railroad Co., 55 N. Y. 579; Cameron v. Railroad Co., 145 N. Y. 400, 40 N. E. 1; Park v. Railroad Co., 155 N. Y. 215, 219, 49 N. E. 674. The burden is on the injured servant to prove the master's negligence in employing or continuing the employment of an incompetent servant. Wright v. Railroad Co., 25 N. Y. 566; Gilman v. Eastern Railroad Corp., 10 Allen, 233; Davis v. Railroad Co., 20 Mich. 105, 122. When a servant becomes incompetent, his co-servant, knowing thereof, assumes the risk of injury to himself arising from such incompetency, unless he notify the master of the same when he has a fair opportunity to do so. Davidson v. Railroad Co., 44 Fed. 476, 481; Kroy v. Railroad Co., 32 Iowa, 357; Youll v. Railroad Co., 66 Iowa, 346, 23 N. W. 736. The holding was correct in the dissenting opinion in Tonnesen v. Ross, 58 Hun, 415, 12 N. Y. Supp. 150, 151. It may be added that this assumption of the risk of such incompetency continues even after the master has been apprised thereof, if he continue the incompetent servant in his employment. This is qualified by the rule that, if the master hold out inducements to the co-servant to remain in his service, such co-servant may thereby be relieved from the risk of service with an incompetent person.

In the case at bar the libelant accuses the master of the ship of negligence in continuing the mate in his service, when, as it is charged, the mate was incompetent by reason of intoxication to perform his usual duties. The evidence shows that during the afternoon, in the absence of the master, the mate went ashore, and became intoxicated; but such intoxication had diminished to such an extent that

to ordinary observation the insobriety was not noticeable. It does not appear that the master knew of the condition before the accident; and, indeed, he testifies that he did not, and several others, including the pilot, stated that the mate was apparently sober. But how can the libelant charge the master with negligence? He knew of the precise condition, whatever it was. He did not notify the master, but, on the other hand, he used efforts to keep the fact of the mate's intoxication from the master's knowledge, and gave as a reason that, if the master had such knowledge, he would "chase him [the offending servant] ashore." Here is failure to notify, connivance at the transgression of the mate, and effort to prevent the master knowing a fact, the knowledge of which is made the present ground of the master's culpability. When a servant so acts, he assumes the risk of his co-servant's incompetency. A servant cannot conceal his co-servant's defects, and thereafter declare his master culpable because he did not see them. If the servant knows of defects in machinery, dangers connected with the place where he works, habits of his fellow workmen which threaten his own safety, he may pursue one of two courses: (1) notify the master, and wait for a reasonable time for the master to remove the dangerous condition; or (2) be silent, and take the risk. In the present case the libelant aided the offending servant, shielded him from the master's observation, and hid his offense. So the case is this: The mate was negligent. His negligence possibly arose from his insobriety. His co-servant sought to screen his fault from discovery, and to prevent his discharge from the ship. Under such a state of facts, he cannot assert that the mate was an unfit servant, and that he should have been expelled from the ship for the very offense which the libelant concealed, or sought to conceal. Such conduct on the part of the libelant was a violation of his own duty, and a waiver of his right to have his co-servant discharged or suspended from service for insobriety. The libelant testifies that he had served with the mate on previous voyages, and that, "the three last trips that I was on board, he was drunk every time," and that once he had seen him drunk in the presence of the master. The master denies knowledge of such intemperance. But it is enough that the libelant knew of it, and, after opportunities to leave the service, elected to continue the employment with such a co-servant; and if to this be added the fact, already discussed, that, at the very time when his intoxication is alleged to have contributed to the injury, the libelant condoned the offense, and shielded the offender, there can be no hesitation in deciding that the libelant assumed the risk of injury arising from the mate's habits and condition. The libel must be dismissed.