[654 NYS2d 791]

KENNETH R. et al., Respondents, v ROMAN CATHOLIC DIOCESE OF BROOKLYN, Appellant, et al., Defendant.

Second Department, March 3, 1997

## APPEARANCES OF COUNSEL

*Conway, Farrell, Curtin & Kelly, P. C.,* New York City *(Jonathan Uejio* of counsel), for appellant.

*Kenneth Litwack,* Bayside *(Robert Litwack* of counsel), for respondents.

## OPINION OF THE COURT

GOLDSTEIN, J.

At issue here is whether the plaintiffs have stated causes of action against the appellant Roman Catholic Diocese of Brooklyn sounding in negligent hiring, negligent retention, and negligent supervision. We find that their allegations with

respect to negligent retention and negligent supervision are sufficient to withstand the appellant's cross motion to dismiss the complaint pursuant to CPLR 3211 (a) (7), but that they do not have a cause of action to recover damages for negligent hiring.

The plaintiffs' amended complaint alleges that, "on or about or between July 13, 1983, and August 31, 1989", the appellant's codefendant, Enrique Diaz Jimenez, an ordained Roman Catholic priest, sexually abused the infant plaintiffs. Enrique Diaz Jimenez pleaded guilty to sexual abuse in the third degree based upon this conduct. However, as noted by the Supreme Court, that conduct did not fall within the scope of his employment and therefore the appellant is not vicariously liable for his conduct under the theory of respondeat superior *(see, Cornell v State of New York,* 46 NY2d 1032; *Mercer v State of New York,* 125 AD2d 376). Consequently, the Supreme Court granted those branches of the appellant's cross motion which were to dismiss the first and second causes of action insofar as asserted against it. The Supreme Court also dismissed the plaintiffs' third cause of action sounding in clergy malpractice, and their tenth cause of action alleging that the appellant created a "climate and custom" of indifference to sexual abuse. Those rulings are not before us on this appeal.

In instances where an employer cannot be held vicariously liable for its employee's torts, the employer can still be held liable under theories of negligent hiring, negligent retention, and negligent supervision *(see, Hall v Smathers,* 240 NY 486; Restatement [Second] of Torts § 317). However, a necessary element of such causes of action is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury *(see, e.g., Park v New York Cent. & Hudson Riv. R. R. Co.,* 155 NY 215; *Gallo v Dugan,* 228 AD2d 376; *Mataxas v North Shore Univ. Hosp.,* 211 AD2d 762; *Detone v Bullit Courier Serv.,* 140 AD2d 278; *Di Cosala v Kay,* 91 NJ 159, 450 A2d 508; Restatement [Second] of Agency § 213, comment *d).*

When considering an application to dismiss a cause of action pursuant to CPLR 3211 (a) (7), "the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one" *(Guggenheimer v Ginzburg,* 43 NY2d 268, 275; *see, Leon v Martinez,* 84 NY2d 83; *Rovello v Orofino Realty Co.,* 40 NY2d 633, 636). Generally, such a determination can be made from the factual allegations in the four corners of the complaint *(see, Guggenheimer v Ginzburg, supra,* at 275; *Foley*

*v D'Agostino,* 21 AD2d 60, 64-65). Evidentiary material may be considered to "remedy defects in the complaint" *(Rovello v Orofino Realty Co., supra,* at 636), "and, unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it", dismissal may not be predicated on such evidentiary material *(Guggenheimer v Ginzburg, supra,* at 275).

There is no statutory requirement that causes of action sounding in negligent hiring, negligent retention, or negligent supervision be pleaded with specificity *(see, Jones v Trane,* 153 Misc 2d 822, 831; *cf.,* CPLR 3016; *Byrd v Faber,* 57 Ohio St 3d 56, 61, 565 NE2d 584, 589). However, a complaint which contains bare legal conclusions and/or factual claims which are "flatly contradicted by documentary evidence" should be dismissed pursuant to CPLR 3211 (a) (7) *(Corporate Natl. Realty v Philson Ltd.,* 232 AD2d 518, 519; *see, e.g., Doria v Masucci,* 230 AD2d 764; *Lovisa Constr. Co. v Metropolitan Transp. Auth.,* 198 AD2d 333).

█ The plaintiffs' amended complaint alleges that the appellant "had prior knowledge or should have known that the defendant Jimenez was a sexual deviant" and therefore was negligent in hiring, supervising, and retaining him. The plaintiffs further contend that the appellant failed to "establish proper guidelines and procedures", failed to "properly screen and hire applicants to the priesthood", and "failed to have Defendant Jimenez examined psychiatrically and/or psychologically to determine his fitness for serving in the capacity as a Roman Catholic priest".

Certain undisputed facts emerge from the documentary evidence in the record. The codefendant Jimenez was ordained a Roman Catholic priest in 1977, in Venezuela. He came to the Roman Catholic Diocese of Brooklyn in 1983, with a letter of reference from the Archbishop of Merida, Venezuela, and was assigned to work in St. Leo's Church.

Ordination to the priesthood confers a religious, not legal status, and may be characterized as a "quintessentially religious" matter *(Serbian Orthodox Diocese v Milivojevich,* 426 US 696, 720). Imposing liability for conferring that status would create serious concerns of excessive entanglement in religious affairs, in violation of the First Amendment of the United States Constitution *(see, Pritzlaff v Archdiocese of Milwaukee,* 194 Wis 2d 302, 327, 533 NW2d 780, 790, *cert*

*denied* — US —, 116 S Ct 920; *see also, Rayburn v General Conference of Seventh-day Adventists,* 772 F2d 1164, *cert denied* 478 US 1020; *Downs v Roman Catholic Archbishop of Baltimore,* 111 Md App 616, 683 A2d 808).

However, the question of whether liability could ever be imposed for ordination to the priesthood need not be determined here since the only entity of the Roman Catholic Church sued by the plaintiffs is the appellant Roman Catholic Diocese of Brooklyn which the amended complaint alleges "is a corporation duly licensed to do business in the State of New York". Thus, pursuant to the allegations in the amended complaint, the appellant is a separate entity *(see generally, Heenan v Roman Catholic Diocese,* 158 AD2d 587). The plaintiffs assert no facts from which one could infer that the appellant was responsible for Jimenez's status as a Roman Catholic priest, since he was ordained in Venezuela by officials of the diocese there. Accordingly, the fifth and eighth causes of action, alleging that the appellant failed to screen or determine Jimenez's fitness for the priesthood, must be dismissed.

With respect to negligent hiring, the documentary evidence in the record establishes that the appellant did not and could not have known of Jimenez's propensities when he arrived here from Venezuela with a letter of reference. The plaintiffs allege that the appellant should have initiated some investigations of Jimenez before hiring him to work in a church under its control. The question of whether there is such a common-law duty is a question of law for the courts *(see, D'Amico v Christie,* 71 NY2d 76; *Eiseman v State of New York,* 70 NY2d 175, 190).

There is no common-law duty to institute specific procedures for hiring employees unless the employer knows of facts that would lead a reasonably prudent person to investigate the prospective employee *(see, Ford v Gildin,* 200 AD2d 224, 226-227; *Stevens v Lankard,* 31 AD2d 602, *affd* 25 NY2d 640; *Amendolara v Macy's N. Y.,* 19 AD2d 702; *cf., Rhames v Supermarkets Gen. Corp.,* 230 AD2d 780). Since Jimenez came to the appellant with a letter of reference from his Archbishop, which gave the appellant no reason to believe there was any problem, the appellant cannot be charged with negligence for failing to investigate further *(see, Lopez v Burns Intl. Detective Agency,* 48 AD2d 645; *Roman Catholic Bishop of San Diego v Superior Ct.,* 42 Cal App 4th 1556, 50 Cal Rptr 2d 399; *Kennedy v Ro-*

*man Catholic Diocese,* 921 F Supp 231).* Accordingly, the plaintiffs' sixth cause of action, alleging "failure to establish proper guidelines and procedures", and the plaintiffs' seventh cause of action, alleging that the appellant "was negligent in hiring Jimenez", must be dismissed.

In their bill of particulars, the plaintiffs allege that the appellant acquired actual or constructive notice of the codefendant Jimenez's propensity to sexually abuse children from "statements made by the infant plaintiffs to priests at St. Leo's Church and Our Lady of Sorrows Church", and from the codefendant Jimenez himself. Allegations in a "bill of particulars are to be taken into account in considering the sufficiency of the challenged causes of action" *(Moore v Johnson,* 147 AD2d 621; *see, Nader v General Motors Corp.,* 25 NY2d 560, 565). If, as the plaintiffs allege in their bill of particulars, the infant plaintiffs and/or Jimenez himself made statements to other priests at St. Leo's Church or Our Lady of Sorrows Church giving them notice of Jimenez's conduct, the plaintiffs may have causes of action sounding in negligent retention and negligent supervision. Pursuant to prevailing case law, as a general rule, imposition of such liability would not violate constitutional and statutory guarantees of free exercise of religion and separation of church and State.

It is well settled that generally, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice" *(Church of Lukumi Babalu Aye v City of Hialeah,* 508 US 520, 531; *see, Employment Div. v Smith,* 494 US 872).* Some cases have indicated that the First Amendment to the United States Constitution may be asserted as a defense if the defendant's conduct that caused the plaintiff's injury finds its basis in religious beliefs and practices *(see, Wisconsin v Yoder,* 406 US 205, 215-216; *Konkle v Henson,* 672 NE2d 450 [Ind App]; *Destefano v Grabrian,* 763 P2d 275, 283 [Colo]). Here, however, there is no indication that requiring increased supervision of Jimenez or the termination of his employment by the appel-

---

* The plaintiffs allege in their bill of particulars that certain unspecified "studies" have been published "showing the existence of ongoing problems in the priesthood relating to sexual activity with children thereby raising a duty to inquire". However, imposing a special duty to inquire as to backgrounds of priests as a class has no legal basis, and carries with it discriminatory overtones against individuals merely because they have been ordained to the priesthood *(see generally, McDaniel v Paty,* 435 US 618).

lant based upon Jimenez's conduct would violate any religious doctrine or inhibit any religious practice *(see, Swaggart Ministries v Board of Equalization,* 493 US 378; *L.L.N. v Clauder,* 203 Wis 2d 570, 552 NW2d 879).

The enactment of the Religious Freedom Restoration Act of 1993 (42 USC § 2000bb *et seq.)* does not alter this analysis. That statute provides that if a law of general applicability substantially burdens the exercise of religion, such application must be in furtherance of a compelling State interest and must constitute "the least restrictive means of furthering that compelling governmental interest" (42 USC § 2000bb-1 [b] [2]). However, that statute only applies if the free exercise of religion is " 'substantially' burdened" *(Geisinsky v Village of Kings Point,* 226 AD2d 340, 341) because the activities in question are motivated by religious beliefs *(see, Mack v O'Leary,* 80 F3d 1175, 1178; *Bryant v Gomez,* 46 F3d 948, 949; *Matter of Salahuddin v Coughlin,* 222 AD2d 950, *cert denied* — US —, 117 S Ct 317). As previously noted, there is no indication that the level of supervision exercised over Jimenez, or his retention in the appellant's employ, was dictated by any religious doctrine. Indeed, it appears from the record that Jimenez's employment relationship with the appellant was ultimately terminated, and his requests for additional employment were denied *(cf., Schmidt v Bishop,* 779 F Supp 321, 331).

Moreover, while the First Amendment to the United States Constitution prohibits regulation of religious beliefs, *conduct* by a religious entity "remains subject to regulation for the protection of society" *(Cantwell v Connecticut,* 310 US 296, 304; *see, Employment Div. v Smith,* 494 US 872, *supra; Destefano v Grabrian,* 763 P2d 275, 283, *supra).* The First Amendment does not grant religious organizations absolute immunity from tort liability *(see, Konkle v Henson,* 672 NE2d 450, 456; *supra; Moses v Diocese of Colo.,* 863 P2d 310, 319 [Colo]). Therefore, religious entities must be held accountable for their actions, "even if that conduct is carried out as part of the church's religious practices" *(Meroni v Holy Spirit Assn. for Unification of World Christianity,* 119 AD2d 200, 203). Religious entities have some duty to prevent injuries inflicted by persons in their employ whom they have reason to believe will engage in injurious conduct *(see, Konkle v Henson, supra,* at 456; *L.L.N. v Clauder,* 203 Wis 2d 570, 552 NW2d 879, *supra; Erickson v Christenson,* 99 Ore App 104, 109, 781 P2d 383, 386-387; *Gallas v Greek Orthodox Archdiocese,* 154 Misc 2d 494, 499-500; *Jones v Trane,* 153 Misc 2d 822, 830-831, *supra).*

Therefore, the plaintiffs' fourth and ninth causes of action, sounding in negligent supervision and retention, and the eleventh cause of action, asserting a derivative claim, are sufficient to withstand a motion to dismiss the complaint pursuant to CPLR 3211.

Accordingly, the order should be modified, on the law, by deleting the provisions thereof which denied those branches of the appellant's cross motion which were to dismiss the fifth, sixth, seventh, and eighth causes of action, and substituting therefor provisions granting those branches of the cross motion.

MILLER, J. P., JOY and ALTMAN, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provisions thereof which denied those branches of the appellant's cross motion which were to dismiss the fifth, sixth, seventh, and eighth causes of action, and substituting therefor provisions granting those branches of the cross motion; as so modified, the order is affirmed, insofar as appealed from, without costs or disbursements.