**Ralph BRANNON, Plaintiff,**

v.

**Merwyn TARLOV, John Hancock Life Insurance of America and United Food and Commercial Workers International Union, AFL–CIO and CLC, Defendants.**

No. CV 95–3321.

United States District Court,
E.D. New York.

Dec. 10, 1997.

Ralph Brannon, Brooklyn, NY, pro se.

Nixon, Hargrave, Devans & Doyle LLP by Christopher A. D'Angelo, New York City, for Defendants Merwyn Tarlov and John Hancock Life Insurance of America.

Vladeck, Waldman, Elias & Englehard, P.C. by Patricia McConnell, New York City, for Defendant United Food and Commercial Workers International Union.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff pro se Ralph Brannon[1] brings the above-referenced action against John Hancock Life Insurance of America ("John Hancock"), Merwyn Tarlov, and the United Food and Commercial Workers International Union (the "Union"), asserting various breaches of the collective bargaining agreement ("CBA") arising out of his employment as a marketing representative with John Hancock. Plaintiff brings this action pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 61 Stat. 156, 29 U.S.C. § 185, thus establishing federal question jurisdiction under 28 U.S.C. § 1331(a). To the extent that plaintiff raises state law claims not cognizable under § 301, this Court will exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Presently before the Court are the parties'

motions for summary judgment. For the reasons set forth below, plaintiff's motion is denied, defendants' motions are granted, and the case is dismissed.

## FACTS

Plaintiff was employed by John Hancock as a marketing representative from August 23, 1981 to March 1994, and was responsible for soliciting sales of insurance and investment products. At the times relevant to this matter, production quotas for marketing representatives were set forth in the CBA between John Hancock and the Union, effective July 1, 1993 to June 30, 1996 (the "1993 Contract"). Plaintiff was employed in the collective bargaining unit covered by the 1993 Contract, voted on its ratification, and, by March 4, 1994, had a copy of the 1993 Contract.

Article XVI, Section 18 of the 1993 Contract required marketing representatives, also known as insurance agents, to submit new commissions in the amount of $7500 for the period July 1, 1993 through December 31, 1993, in order to maintain eligibility for continued employment by John Hancock. In January 1994, John Hancock determined that plaintiff had failed to meet his quota in the fourth quarter of 1993 by approximately $146.00. By letter dated January 10, 1994, plaintiff was advised by John Hancock that he had failed to meet his commission quota, was on probation pursuant to the terms of the 1993 Contract, and told that if, for any quarter, he failed to reach certain cumulative quarterly first year commission levels set forth in the 1993 Contract, his employment would be terminated.

On March 4, 1994, plaintiff requested the Union to file a grievance over his threatened discharge, and such a grievance was filed.

---

1. Although plaintiff represents himself in this matter, he is not unfamiliar with the law. Plaintiff received a J.D. degree in 1979, passed the July 1995 New York State Bar examination, and was admitted to practice in New York State on January 8, 1997. Brannon Dep. at 11–12. In addition, plaintiff submitted various versions of his resume as exhibits to his motion for summary judgment. The resumes indicate that, since 1994, plaintiff has been employed by two law firms to draft briefs and other documents in connection with labor and insurance matters. "Although pro se litigants normally receive extra latitude in their pleadings, attorneys who represent themselves are not held to a lesser standard than attorneys who represent others." *Davidson v. Garry*, 956 F.Supp. 265, 267 (E.D.N.Y.1996); *accord Harbulak v. County of Suffolk*, 654 F.2d 194, 198 (2d Cir.1981); *Leeds v. Meltz*, 898 F.Supp. 146, 149 (E.D.N.Y.1995), *aff'd*, 85 F.3d 51 (1996).

Because plaintiff failed to meet his quota for the first quarter of 1994, his employment was terminated on or about April 22, 1994. During the pendency of the grievance, John Hancock became aware that it had failed to credit plaintiff with commissions on one policy that he had written in the last quarter of 1993. If plaintiff had been credited with that commission, he would have met his quota for the last quarter of 1993. In June 1994, John Hancock offered to reinstate plaintiff to his former position. Plaintiff rejected the offer.

The Union continued to pursue plaintiff's grievance and an arbitration hearing was scheduled in accordance with the terms of the CBA. On January 4, 1995, John Hancock advised the Union by letter that it was renewing its offer to reinstate plaintiff on a non-probationary basis. On January 10, 1995, the Union advised plaintiff that the Union had agreed to settle plaintiff's termination grievance on the terms offered by John Hancock. On or about January 25, 1995, plaintiff sent John Hancock a handwritten document which stated in pertinent part: "Attached are the letters dated January 4, 1995 and January 10, 1995. Pursuant to these letters I will be appearing Friday Jan 27, 1995 to pursue the intent and spirit of enclosed Company and Union letters." The arbitration that had been scheduled under the terms of the 1993 Contract was withdrawn and plaintiff was scheduled to return to work in January 1995. Plaintiff, however, did not return to work. In late February 1995, he advised John Hancock that he had decided to pursue his disability claim rather than return to work.

The disability claim to which plaintiff referred arose out of a confrontation that took place between plaintiff and a fellow marketing representative named William Ross in mid-July 1993. According to plaintiff, Ross insulted him with profane language because Ross believed that plaintiff had advised their office manager, defendant Tarlov, that Ross was inappropriately attired for business. Plaintiff further states that he and Ross thereafter had a physical confrontation just outside the entrance to the office, as plaintiff was attempting to enter. Plaintiff was arrested for assault and was jailed for five days

when he refused to be fingerprinted. Plaintiff claims that the incidents with Ross, their sequelae, and his placement on probation for failure to meet the 1993 Contract's required quota caused him to suffer severe emotional distress. This emotional distress led him to file the disability claim in or about February 1994.

In July 1994, plaintiff commenced an action in state court against the instant defendants Tarlov and John Hancock, as well as certain other employees of John Hancock, but not against the Union. That suit was removed to this Court and dismissed by Order dated February 23, 1995. In the instant action, plaintiff filed his complaint naming the Union as a defendant on August 14, 1995, and filed an Amended Complaint on September 7, 1995.

*DISCUSSION*

A motion for summary judgment may not be granted unless the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment. *McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir. 1997). However, when the nonmoving party fails to make a showing on an essential element of its case with respect to which it bears the burden of proof, summary judgment will be granted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court concludes that none of the claims advanced by plaintiff is supported by evidence sufficient to raise a genuine issue of material fact requiring trial and finds that judgment should be rendered in favor of defendants.

■ In order to ensure uniformity in interpreting the meaning of collective bargaining agreements, the Supreme Court has held that state law "does not exist as an independent source of private rights to enforce collective bargaining contracts." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). Conse-

quently, § 301 of the LMRA governs claims founded directly on rights created by collective bargaining agreements as well as claims substantially dependent upon analysis of a collective bargaining agreement. *Id.; Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957) ("the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws").

■ In Count I of his complaint, plaintiff contends that John Hancock and Tarlov negligently retained Ross as an employee and, as a consequence of that negligence, breached the CBA (*i.e.*, the 1993 Contract) by failing to provide a safe and healthy work environment. Amended Complaint ¶ 28. Plaintiff's characterization of his claim notwithstanding, the Court must resolve at the threshold whether the claim is founded directly on a right created by the CBA or is substantially dependent upon analysis of the CBA.

For plaintiff's negligent retention claim to succeed, plaintiff must demonstrate that John Hancock and Tarlov negligently failed to dismiss Ross for his alleged propensities to act in a verbally and physically abusive manner. That demonstration, however, necessarily requires interpretation of Article VII of the 1993 Contract which governs management rights under the CBA, in particular, the right to supervise its employees, of whom Ross was one. It also requires interpretation of Article IX which provides that a marketing representative, such as Ross, may not be discharged except for "just and sufficient cause." This Court agrees with numerous other courts that have concluded, on similar facts, that the resolution of negligent retention claims requires interpretation of the CBA and, as a result, are governed by federal labor law rather than state law. *See, e.g., Weatherholt v. Meijer Inc.*, 922 F.Supp. 1227, 1233 (E.D.Mich.1996) (negligent retention claim preempted by LMRA because claim would require court to interpret CBA—employer's duty relating to supervision and retention of employees arises solely from the CBA); *Morris v. Ambassador Nursing Home, Inc.*, 845 F.Supp. 1164, 1167 (E.D.Mich.1994) (same); *Burnette v. Godshall*, 828 F.Supp. 1439, 1446 (N.D.Cal.1993) (employee could not avoid federal preemption of state law claim for negligent supervision of co-employees where CBA expressly provided employer with authority to supervise the work force), *aff'd*, 72 F.3d 766 (9th Cir.1995); *Johnson v. AT & T Technologies, Inc.*, 713 F.Supp. 885, 889 (M.D.N.C.1989) (LMRA preempted employee's state law negligent retention claim where claim required determination of whether employer's actions toward co-worker accorded with its rights and duties under the CBA).

■ Applying basic principles of federal labor law to plaintiff's § 301 claim of negligent retention, the Court finds that plaintiff's claim must be dismissed. Plaintiff did not file a grievance relating to the verbal insults allegedly directed at him by Ross, or the physical confrontation at the office door. Indeed, he did not file any grievance related to Ross. Although the LMRA permits an individual employee to sue his employer for breach of a CBA, the employee is required to exhaust any grievance or arbitration remedies provided in the CBA. *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983). Plaintiff's failure to exhaust his grievance remedies requires dismissal of his claim against John Hancock. As to Tarlov, plaintiff's § 301 claim must be dismissed because Tarlov is not a party to the underlying CBA, and is not a proper defendant under the LMRA. *See Cruz v. Robert Abbey, Inc.*, 778 F.Supp. 605, 610 (E.D.N.Y.1991) (collecting cases).

■ Moreover, even if plaintiff's negligent retention claim is construed as setting forth a state law cause of action, it fails. An essential element of a negligent retention claim is that the employer knew or should have known of the employee's propensity for the conduct that caused the injury. *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 654 N.Y.S.2d 791, 793 (2d Dep't 1997), *cert. denied,*—— U.S. ——, 118 S.Ct. 413, 139 L.Ed.2d 316 (1997); *Hassan v. Marriott Corp.*, —— A.D.2d ——, 663 N.Y.S.2d 558 (1st Dep't 1997). Although plaintiff's papers are replete with conclusory assertions, plaintiff sets forth no evidence to

suggest that either Tarlov or John Hancock knew of Ross's alleged propensities. Plaintiff concedes that his assertions about Ross's behavior in the workplace are based on what other people told him, that he did not witness any violent or insulting behavior in the workplace by Ross, and that he had no personal knowledge of Ross's behavior. Brannon Dep. at 81–82. Plaintiff did not know whether Tarlov had witnessed any of the alleged conflicts involving Ross, *id.* at 88–90, nor did plaintiff complain about Ross's alleged behavior to Tarlov, any other John Hancock supervisor, or to John Hancock's human resources department. *Id.* at 87–88. Absent any proof that Tarlov or John Hancock had reason to know that Ross had a propensity to be verbally or physically abusive, plaintiff's negligent retention claim cannot stand even under state law.

▮▮▮ Plaintiff asserts a second claim against John Hancock, contending that John Hancock wrongfully terminated him. He also asserts an unjust enrichment claim against John Hancock, contending that the company improperly retained renewal commissions that should have been paid to him. It cannot be disputed that the wrongful termination claim falls within the scope of § 301—indeed, plaintiff filed a grievance pursuant to the 1993 Contract and prevailed. An employee, however, is bound by the result of the remedies provided by the CBA to the extent of the finality provisions contained in the CBA, and cannot pursue judicial relief if the remedy is considered final. *DelCostello,* 462 U.S. at 164, 103 S.Ct. at 2290. Articles V and VI of the 1993 Contract provide a multistage grievance procedure culminating in arbitration, the results of which "shall be final and binding." Because plaintiff may not seek judicial relief in addition to the relief he won through the 1993 Contract and accepted, plaintiff's second count of wrongful termination must be dismissed.

▮▮▮ As for plaintiff's unjust enrichment claim, the issues of severance pay and retention of renewal commissions are expressly set forth in the 1993 Contract in Article XVIII (Compensation), section 17.

Accordingly, plaintiff's claim is governed by § 301. Plaintiff did not file a grievance regarding his severance pay and renewal commissions. Consequently, plaintiff's unjust enrichment claim must be dismissed for failure to exhaust his contractual remedies.

▮▮▮ An employee bringing suit under LMRA § 301 may attempt to escape the exhaustion and finality bars by framing his claim as a "hybrid" action brought against both the employer for breach of the CBA and against the Union for breach of the duty of fair representation. *DelCostello,* 462 U.S. at 164–65, 103 S.Ct. at 2290–91. Plaintiff, however, does not set forth a hybrid claim. As the Second Circuit has made clear:

> A hybrid case is one in which the employee has a cause of action against both the employer and the union. The claim against the employer is that it violated the collective bargaining agreement. The claim against the union is that the union did not properly represent the employee in pressing the grievance against the employer.

*McKee v. Transco Prods., Inc.,* 874 F.2d 83, 86 (2d Cir.1989); *DelCostello,* 462 U.S. at 164–65, 103 S.Ct. at 2290–91.

Although plaintiff asserts that the Union breached its duty of fair representation, plaintiff does not contend that the Union breached its duty in connection with the handling of his termination grievance. Indeed, he conceded during his deposition that he had no complaint with the Union's efforts in prosecuting the grievance. Brannon Dep. at 240–41. Rather, plaintiff contends that the Union did not fairly represent agents like himself due to the Union's "failure to negotiate warranted severance pay and/or commission renewal retention for agents whom [sic] are disproportionate [sic] meritorious." Complaint ¶ 73. Plaintiff's displeasure with the Union, thus, relates not to the processing of his termination grievance, but with the Union's negotiation of the 1993 Contract. Consequently, plaintiff's wrongful termination claim is not saved from extinction due to the exhaustion and finality requirements.[2]

---

2. Even if plaintiff's § 301 wrongful termination/unjust enrichment claim against John

Hancock could be construed as a hybrid, it would be barred as untimely under the six month

With respect to the alleged breach of fair representation as it relates to the negotiation of the contract provisions on severance pay and retention of renewal commissions, plaintiff's claim must be dismissed as untimely. It is well settled that the limitations period for a fair representation claim is six months running from the time that plaintiff knew or reasonably should have known that a breach of the duty of fair representation took place. *Eatz v. DME Unit of Local No. 3,* 794 F.2d 29, 33 (2d Cir.1986). Here, plaintiff should have known of the 1993 Contract's provisions regarding severance pay and commission retention at the time of its ratification, *see id.,* and, certainly, plaintiff was apprised of the provisions by March 4, 1994, when he received a copy of the 1993 Contract.

Plaintiff's fair representation claim may also be dismissed for lack of evidence. A breach of the duty of fair representation takes place only when the union's conduct is arbitrary, discriminatory, or in bad faith. *United Steelworkers of America v. Rawson,* 495 U.S. 362, 372, 110 S.Ct. 1904, 1910, 109 L.Ed.2d 362 (1990). Other than his conclusory assertion that the 1993 Contract discriminated against agents like himself, the Court finds no evidence in the record raising a genuine issue of fact as to the Union's alleged failure to represent plaintiff fairly in negotiating the 1993 Contract.

Separate and distinct from his claims under the LMRA, plaintiff also seeks to sue his employer, John Hancock, and his office manager, Merwyn Tarlov, under the Employee Retirement Income Security Act of 1974, on the grounds that they acted in bad faith in terminating his disability benefits in June 1995. Complaint ¶ 14. Assuming arguendo that the disability benefits referred to by plaintiff were paid under an ERISA plan, plaintiff's allegations fail to state a claim for which relief may be granted. An ERISA plan beneficiary may bring a civil action to recover benefits due under the terms of the plan, *see* 29 U.S.C. § 1132(a)(1)(B), but only the plan or its administrators or trustees in their capacity as such are proper defendants. *See Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989); *Greater Blouse, Skirt, & Undergarment Ass'n, Inc. v. Morris,* No. 93–1257, 1996 WL 325595, at *4 (S.D.N.Y. June 12, 1996). The plan participant's employer is not a proper party defendant. *See Barnett v. I.B.M. Corp.,* 885 F.Supp. 581, 591 (S.D.N.Y. 1995) (dismissing ERISA claim for disability benefits brought against employer; ERISA only authorizes suits against plan itself, not employer or sponsor). Plaintiff's ERISA claim against his employer and office manager is dismissed for want of a proper party defendant.

Finally, plaintiff alleges a claim against John Hancock and Tarlov under the Thirteenth Amendment. Plaintiff does not allege, let alone offer any evidence to suggest, that defendants compelled plaintiff to labor for them or placed him in a condition of involuntary servitude. *See United States v. Kozminski,* 487 U.S. 931, 943, 108 S.Ct. 2751, 2760, 101 L.Ed.2d 788 (1988); *Immediato v. Rye Neck Sch. Dist.,* 73 F.3d 454, 459 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 60, 136 L.Ed.2d 22 (1996). Plaintiff's Thirteenth Amendment claim is dismissed. The Court has considered plaintiff's remaining arguments and finds them equally without merit.

### CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is denied and defendants' motions for summary judgment are granted in their entirety. Plaintiff's claims are dismissed. The Clerk of the Court is directed to close the case.

SO ORDERED.

---

limitations period applicable to hybrid claims. *See DelCostello,* 462 U.S. at 169–70, 103 S.Ct. at 2292–93 (establishing six-month limitations period); *King v. New York Tel. Co.,* 785 F.2d 31, 34 (2d Cir.1986) (limitations period on hybrid claim begins to run when plaintiff knew or should have known of the breach of the union's duty of fair representation). Whatever breach plaintiff might complain of regarding his representation in the grievance, such breach should have been apparent at the time he accepted John Hancock's reinstatement offer in January 1995, more than six months before this action was commenced.