# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

470

CA 15-00769

PRESENT: PERADOTTO, J.P., CARNI, LINDLEY, CURRAN, AND TROUTMAN, JJ.

---

ELLIOTT B. PATER, AS ADMINISTRATOR OF THE
ESTATE OF JOYCE PECKY, DECEASED,
PLAINTIFF-APPELLANT,

V                                                    MEMORANDUM AND ORDER

CITY OF BUFFALO, BUFFALO POLICE DEPARTMENT
AND GREGG O'SHEI, DEFENDANTS-RESPONDENTS.
(ACTION NO. 1.)

-------------------------------------------

SUSAN PHISTER, PLAINTIFF-APPELLANT,

V

CITY OF BUFFALO, BUFFALO POLICE DEPARTMENT
AND GREGG O'SHEI, DEFENDANTS-RESPONDENTS.
(ACTION NO. 2.)

-------------------------------------------

ERICA SNYDER, PLAINTIFF-APPELLANT,

V

CITY OF BUFFALO AND GREGG O'SHEI,
DEFENDANTS-RESPONDENTS.
(ACTION NO. 3.)

---

CELLINO & BARNES, P.C., BUFFALO (GREGORY V. PAJAK OF COUNSEL), FOR
PLAINTIFF-APPELLANT ELLIOTT B. PATER, AS ADMINISTRATOR OF THE ESTATE
OF JOYCE PECKY.

PAUL WILLIAM BELTZ, P.C., BUFFALO (WILLIAM QUINLAN OF COUNSEL), FOR
PLAINTIFFS-APPELLANTS SUSAN PHISTER AND ERICA SNYDER.

TIMOTHY A. BALL, CORPORATION COUNSEL, BUFFALO (ROBERT E. QUINN OF
COUNSEL), FOR DEFENDANTS-RESPONDENTS CITY OF BUFFALO AND BUFFALO
POLICE DEPARTMENT.

---

Appeals from an order of the Supreme Court, Erie County (Diane Y.
Devlin, J.), entered July 22, 2014. The order, inter alia, granted
the motion of defendants City of Buffalo and Buffalo Police Department
for summary judgment.

It is hereby ORDERED that the order so appealed from is affirmed
without costs.

Memorandum: Plaintiffs commenced individual actions alleging personal injuries arising out of incidents of sexual abuse committed by defendant Gregg O'Shei while he was on duty as a police officer for defendants City of Buffalo and the Buffalo Police Department (City defendants). O'Shei allegedly selected his victims based on their previous criminal histories, drug abuse, and their status as single mothers. Supreme Court properly granted the motion of the City defendants for summary judgment dismissing the complaints against them. Initially, we note that plaintiffs have not challenged on appeal the court's determination that the City defendants cannot be vicariously liable for the conduct of defendant O'Shei, and they therefore have abandoned any contentions concerning the propriety of that part of the order (*see Pyramid Brokerage Co., Inc. v Zurich Am. Ins. Co.*, 71 AD3d 1386, 1388; *Brunette v Time Warner Entertainment Co., L.P.*, 32 AD3d 1170, 1170).

The court properly granted the motion with respect to plaintiffs' theory that the City defendants negligently retained or supervised O'Shei following his second of two on-duty motor vehicle accidents, the first in 1997 and the second in 2003. Plaintiffs contend that the City defendants failed to do an appropriate evaluation of O'Shei's neuropsychological status after the second motor vehicle accident. Recovery on a negligent retention theory "requires a showing that the employer was on notice of the relevant tortious propensit[y] of the wrongdoing employee" (*Gomez v City of New York*, 304 AD2d 374, 374-375; *see Zanghi v Laborers' Intl. Union of N. Am., AFL-CIO*, 8 AD3d 1033, 1034, *lv denied* 4 NY3d 703), i.e., "that the employer knew or should have known of the employee's propensity for the conduct which caused the injury" (*Kenneth R. v Roman Catholic Diocese of Brooklyn*, 229 AD2d 159, 161, *lv dismissed* 91 NY2d 848, *cert denied* 522 US 967; *see Murray v Research Found. of State Univ. of N.Y.*, 283 AD2d 995, 996, *lv denied* 96 NY2d 719; *Piniewski v Panepinto*, 267 AD2d 1087, 1088). Thus, contrary to plaintiffs' contention, the City defendants were under no common-law duty to institute specific procedures for supervising or retaining O'Shei inasmuch as they did not know of facts that would lead a reasonably prudent person to investigate the employee (*see Buck v Zwelling*, 272 AD2d 895, 895; *Kenneth R.*, 229 AD2d at 163; *see also Judith M. v Sisters of Charity Hosp.*, 93 NY2d 932, 933-934).

Our dissenting colleague applies a legal standard involving hiring procedures from *Travis v United Health Servs. Hosps., Inc.* (23 AD3d 884, 884-885), but neither the Court of Appeals nor we have applied that standard in cases such as this, where hiring procedures are not at issue. Indeed, as the dissent acknowledges, this is a retention case, and it is well settled that the common-law duty for retention does not require as high a degree of care as does hiring (*see Chapman v Erie Ry. Co.*, 55 NY 579, 583; 1B NY PJI3d 2:240 at 720 [2016]). The cases relied on by the dissent are therefore inapplicable. Even assuming, arguendo, that the common-law duty for hiring applies to the instant case, we conclude that the holding of *Travis* and similar cases does not control here. Although *Travis* has been interpreted as imposing a common-law duty on employers to conduct adequate hiring procedures *irrespective* of whether an employer knows

of facts that would lead a reasonably prudent person to investigate an employee (*see* 1B NY PJI3d 2:240 at 719-720 [2016]), we note that this Court has never imposed that broad legal duty on employers.  We have held instead that " '[t]here is no common-law duty to institute specific procedures for hiring employees *unless* the employer knows of facts that would lead a reasonably prudent person to investigate the prospective employee' " (*Buck*, 272 AD2d at 895 [emphasis added]; *see also Judith M. v Sisters of Charity Hosp.*, 249 AD2d 890, 890, *affd* 93 NY2d 932).  We also disagree with the dissent's conclusion that the foreseeability of the conduct gives rise to an employer's duty to investigate an employee's neuropsychological health inasmuch as foreseeability "is applicable to determine the scope of duty—only after it has been determined there is a duty" (*Pulka v Edelman*, 40 NY2d 781, 785).  The duty here did not arise inasmuch as the City defendants did not know of O'Shei's propensity to commit sexual abuse and they did not know of any facts requiring a conclusion that they should have known of such a propensity (*see Zanghi*, 8 AD3d at 1034), and thus the issue of scope of duty is not before us.

Here, the City defendants established as a matter of law that they lacked notice of O'Shei's propensity for the type of behavior causing plaintiffs' harm (*see Paul J.H. v Lum*, 291 AD2d 894, 895; *Curtis v City of Utica*, 209 AD2d 1024, 1025).  The City defendants demonstrated that O'Shei never exhibited any behaviors indicative of his alleged propensity to target vulnerable victims for sexual abuse, nor did the medical information submitted to the City following either of O'Shei's motor vehicle accidents contain any information alerting the City defendants to such propensity.  Therefore, contrary to plaintiffs' contention, no duty arose on the part of the City defendants to employ any specific procedures or otherwise to investigate O'Shei's fitness to return to work following the 2003 accident.

We conclude that plaintiffs failed to raise an issue of fact in opposition to the motion (*see generally Zuckerman v City of New York*, 49 NY2d 557, 562).  Contrary to plaintiffs' contention, the alleged conversation between one of the plaintiffs and her brother, a City of Buffalo patrol officer, does not raise an issue of fact whether the City defendants had actual notice of O'Shei's tortious propensity. The record developed by plaintiffs is inadequate to establish the content of that alleged conversation, as well as the context and circumstances thereof (*see generally Caselli v City of New York*, 105 AD2d 251, 255-256).

Plaintiffs also failed to raise an issue of fact that O'Shei's alleged traumatic brain injury, as purportedly exacerbated by the second motor vehicle accident, furnished constructive notice to the City defendants that O'Shei was likely to exhibit disinhibited behaviors.  As noted above, there is nothing in the record supporting that contention.

The dissent conflates the traumatic brain injury O'Shei suffered in the 1997 motor vehicle accident, for which O'Shei was fully evaluated before his return to work in 2003, with "neuropsychological

issues" that could be related to such an injury, but the record here does not establish that such "neuropsychological issues" ever existed. To the contrary, following the first motor vehicle accident, O'Shei's physicians determined that there was "no evidence of emotional distress" and "no major psychological issues." O'Shei denied that he was experiencing depression, anxiety, or PTSD symptoms, and he also told his physicians he "was not willing to consider counseling for issues associated with his brain injury." Moreover, even after O'Shei was expelled from the Buffalo Police Department and convicted of official misconduct, he testified at his deposition that he had never treated with any psychiatrists or psychologists for any behavioral issues. Inasmuch as neither O'Shei nor his physicians ever detected any "neuropsychological issues" warranting treatment, we conclude that the City defendants were never under a duty to detect such issues in the absence of facts warranting an investigation.

Finally, we conclude that the affidavits of plaintiffs' experts failed to raise an issue of fact. Neither expert offered any detail with respect to the procedures or testing the City defendants should have engaged in following O'Shei's second motor vehicle accident and, therefore, both of their opinions are conclusory (see *Diaz v New York Downtown Hosp.*, 99 NY2d 542, 545; *Keller v Liberatore*, 134 AD3d 1495, 1496; *Neville v Chautauqua Lake Cent. Sch. Dist.*, 124 AD3d 1385, 1386). Moreover, the opinion offered in the affidavit of plaintiffs' expert neuropsychologist—who is not a medical doctor—is speculative inasmuch as he failed to articulate any basis for asserting that "appropriate" testing would have revealed the type of sexually predatory propensity that O'Shei manifested against plaintiffs (see *Golden v Pavlov-Shapiro*, 138 AD3d 1406, 1406; *Bagley v Rochester Gen. Hosp.*, 124 AD3d 1272, 1273-1274).

All concur except PERADOTTO, J.P., who dissents and votes to modify in accordance with the following memorandum: Viewing the facts in the light most favorable to plaintiffs, and drawing every available inference in their favor (see *De Lourdes Torres v Jones*, 26 NY3d 742, 763), I conclude that there are issues of fact that preclude granting summary judgment to defendants City of Buffalo and Buffalo Police Department (City defendants). I therefore respectfully dissent.

As an initial matter, contrary to the City defendants' contention, plaintiffs did not improperly rely on a new theory of liability for negligence in opposition to the City defendants' motion inasmuch as the allegations in plaintiffs' complaints and the original verified bills of particulars were sufficient to encompass plaintiffs' theory that the City defendants' negligence arose from the inadequacy of the procedures used in retaining defendant police officer Gregg O'Shei (see *Salvania v University of Rochester*, 137 AD3d 1607, 1608).

I disagree with the majority's conclusion, however, that the City defendants met their initial burden of eliminating all triable issues of fact with regard to that theory of negligence. Rather, the record establishes that there is an issue of fact whether the City defendants should have known—had they conducted an adequate procedure in retaining O'Shei and returning him to patrol duty following a head

injury he sustained in a motor vehicle accident in November 2003—that O'Shei's conduct was reasonably foreseeable, that is, that he had a propensity to engage in the type of harm alleged by plaintiffs (*see generally N.X. v Cabrini Med. Ctr.*, 280 AD2d 34, 42-43, *mod on other grounds* 97 NY2d 247; *Diana F. v Velez*, 126 AD3d 856, 856; *Travis v United Health Servs. Hosps., Inc.*, 23 AD3d 884, 884-885). As plaintiffs contend, while the evidence submitted by the City defendants established that O'Shei was subjected to neurological testing following his first motor vehicle accident in 1997, and that the resulting records were reviewed by the police department's then-commissioner of legal affairs in determining O'Shei's fitness to return to work in 2001, the City defendants' submissions failed to establish that O'Shei was subjected to any retention procedure before he was returned to work in 2004 following the second accident, shortly after which he began engaging in sexual misconduct directed against plaintiffs (*see generally Doe v Chenango Val. Cent. Sch. Dist.*, 92 AD3d 1016, 1017; *Jones v City of Buffalo*, 267 AD2d 1101, 1102). Indeed, the City defendants merely submitted a report from the City of Buffalo dated December 1, 2003 indicating that O'Shei had been removed from duty by the Erie County Medical Center and his primary physician following the second accident, and a letter stating that O'Shei was cleared to return to work by his primary physician as of April 23, 2004. The City defendants did not establish, however, who made the decision to return O'Shei to active duty, what actions were undertaken to evaluate O'Shei in reaching that decision, and whether such actions were reasonable (*see generally Doe*, 92 AD3d at 1017). The City defendants' own submissions established that they were aware of O'Shei's multiple traumatic brain injuries, including the 1997 injury that resulted in a lengthy absence from work of nearly five years during which time O'Shei received treatment for neuropsychological issues and the subsequent November 2003 "closed head injury" that resulted in another concussion. The City defendants' submissions even included, for example, a 1998 report from a clinical neuropsychologist who examined O'Shei following the first accident and explained that, "[g]iven [O'Shei's] history of multiple head injuries, and our understanding of the cumulative neuropsychological effects of head injuries, even a mild head injury could place [O'Shei] at significant neurologic risk." Nonetheless, the City defendants' submissions fail to establish whether O'Shei, after the second accident in which he sustained another head injury, was subjected to any neurological or psychological testing before being allowed to return to work by the City defendants. Contrary to the majority's conclusion that the City defendants had no duty to investigate O'Shei's fitness to return to work following the second accident, given the City defendants' knowledge of O'Shei's prior traumatic brain injury, his resulting absence from work, and his neuropsychological issues, I conclude that the City defendants were aware of facts that would lead a reasonably prudent person, in light of the subsequent concussive head injury, to investigate O'Shei's neurological and psychological health further before retaining him as an active duty police officer (*see "Jane Doe" v Goldweber*, 112 AD3d 446, 447; *Jones*, 267 AD2d at 1102; *cf. Buck v Zwelling*, 272 AD2d 895, 895; *Kenneth R. v Roman Catholic Diocese of Brooklyn*, 229 AD2d 159, 163, *cert denied* 522 US 967, *lv dismissed* 91 NY2d 848; *see generally Chapman v Erie Ry. Co.*, 55 NY 579, 585-586).

Far from supporting the majority's conclusion, the lack of evidence in the record indicating whether there was any change in O'Shei's fitness to return to work following the second accident—information that may well have been developed by the City defendants upon conducting an adequate investigation—provides a reason to deny the City defendants' motion for summary judgment, not a reason to grant it. In other words, the City defendants failed to eliminate a triable issue of fact whether they should have known, had they required neurological or psychological testing based on their knowledge of O'Shei's physical and neuropsychological history, that O'Shei was not fit to return to active duty as a police officer because he had a propensity to engage in improper disinhibited behavior, including the coerced sexual conduct alleged by plaintiffs (see "*Jane Doe*", 112 AD3d at 447).

Even assuming, arguendo, that the City defendants met their initial burden on their motion, I conclude that plaintiffs raised a triable issue of fact. Plaintiffs submitted the expert affidavit of a neuropsychologist, who reviewed O'Shei's medical records, personally examined him, and prepared a report. The neuropsychologist opined that had the City defendants engaged in appropriate psychological or neuropsychological testing following O'Shei's last reported brain injury in November 2003, they would have learned that such injury resulted in frontal lobe dysfunction that, in the neuropsychologist's medical opinion, ultimately led to the behavior O'Shei perpetrated against plaintiffs. In particular, the neuropsychologist opined that such testing would have revealed the propensity of O'Shei to potentially engage in "disinhibited behaviors" and that O'Shei's inhibitions against engaging in sexual predatory behaviors were compromised by his brain injuries. In his report, the neuropsychologist noted, inter alia, that, given O'Shei's documented history of frontal lobe and limbic brain impairments, and the potential for behavioral problems as a consequence of those conditions, it was prudent and necessary for the City defendants to order a detailed neuropsychological examination, which would have highlighted O'Shei's behavioral liabilities. Thus, according to the neuropsychologist, given the well-documented multiple traumatic brain injuries sustained by O'Shei, a proper fitness-for-duty examination after the second accident and prior to O'Shei's reinstatement as a police officer would have revealed his frontal lobe dysfunction, which would have precluded the City defendants from returning him to work and which, in turn, would have prevented him from engaging in the sexual misconduct directed against plaintiffs. Contrary to the majority's determination, the neuropsychologist's affidavit and incorporated report were not conclusory or speculative inasmuch as he averred that he had performed, and thus was familiar with, fitness-for-duty examinations for police officers, and he opined, in light of O'Shei's history of traumatic brain injuries, that psychological, neuropsychological, neurologic, and SPECT examinations should have been performed. Given those submissions, I agree with plaintiffs that they raised an issue of fact whether the City defendants, had they conducted an adequate procedure, should have known about O'Shei's propensity to engage in improper disinhibited behavior, including the alleged coerced sexual conduct alleged in this case.

I further disagree with the majority's conclusion that there is no triable issue of fact whether the City defendants had actual knowledge of O'Shei's conduct based on the information conveyed to the brother of one of the plaintiffs, who was also a City of Buffalo patrol officer. "The general rule is that knowledge acquired by an agent acting within the scope of his [or her] agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it" (*Center v Hampton Affiliates*, 66 NY2d 782, 784; *see Kirschner v KPMG LLP*, 15 NY3d 446, 465). Even assuming, arguendo, that the City defendants met their initial burden on their motion, I conclude that plaintiffs raised an issue of fact. The brother's deposition testimony established that one of the plaintiffs had informed him that O'Shei was subjecting her to constant harassment and that he never reported the complaint to any superior officers because he did not think the plaintiff was credible. Plaintiffs also submitted the deposition of a police captain who testified that when a citizen makes a complaint to a police officer about another officer's conduct, protocol requires that the officer take the information and provide a report to a supervisor in order to ensure that the report is submitted to the Internal Affairs Division of the police department. I recognize that a jury could conclude that the brother did not obtain the relevant information about O'Shei's harassment of the plaintiff in the course of his employment (*see Christopher S. v Douglaston Club*, 275 AD2d 768, 769), or that the information conveyed was not sufficiently specific to provide actual knowledge that O'Shei had engaged in coerced sexual activity with civilians, but this Court's function on a motion for summary judgment is issue finding, not issue determination (*see Bridenbaker v City of Buffalo*, 137 AD3d 1729, 1731), and the evidence must be viewed in the light most favorable to plaintiffs with every available inference drawn in their favor (*see De Lourdes Torres*, 26 NY3d at 763). Employing those principles, I conclude that plaintiffs raised an issue of fact whether the information received by the brother could be imputed to the City defendants " 'although the information [was] never actually communicated to [the principal]' " (*Chaikovska v Ernst & Young, LLP*, 78 AD3d 1661, 1663, quoting *Center*, 66 NY2d at 784).

Finally, with respect to the alternative ground for affirmance properly raised by the City defendants (*see Parochial Bus Sys. v Board of Educ. of City of N.Y.*, 60 NY2d 539, 544-546; *Matter of Harnischfeger v Moore*, 56 AD3d 1131, 1131), i.e., that they are entitled to governmental immunity, I conclude that Supreme Court did not abuse its discretion in declining to consider that untimely and unpleaded affirmative defense (*see generally Mawardi v New York Prop. Ins. Underwriting Assn.*, 183 AD2d 758, 758; *Fulford v Baker Perkins, Inc.*, 100 AD2d 861, 861-862).

In light of the foregoing, I would modify the order on the law by denying the City defendants' motion for summary judgment to the extent that plaintiffs allege negligent retention, reinstate that claim, and

otherwise affirm.

Entered:  July 8, 2016                    Frances E. Cafarell
                                          Clerk of the Court