"Y.E." v Bodenheimer (2024 NY Slip Op 24291)

[*1]

"Y.E." v Bodenheimer

2024 NY Slip Op 24291

Decided on November 18, 2024

Supreme Court, Rockland County

Fried, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on November 18, 2024
Supreme Court, Rockland County

"Y.E.", a pseudonym as required by 
 New York State Civil Rights Law §50-b, Plaintiff,

against
Gabriel Bodenheimer, YESHIVA BETH MIKROH, CONGREGATION BETH MIKROH INC., and DOES 1-5, whose identities are unknown to Plaintiff, Defendant.

Index No. 030125/2023

Jay S. Campbell, Esq. for Plaintiff
Justin Blitz, Esq. for Defendant-Yeshiva
Avraham C. Moskowitz, Esq. for Defendants Gabriel Bodenheimer and Congregation Beth Mikroh, Inc.

David Fried, J.

The papers filed electronically as NYSCEF Doc. Nos. 40 - 47, 54 - 78, and 81 - 83 were read and considered on the summary judgment motion of Defendant Yeshiva Beth Mikroh seeking dismissal of the Complaint insofar as asserted against it.
Plaintiff alleges that he was sexually assaulted between August 2009 and July 2010 by Defendant Gabriel Bodenheimer ("Bodenheimer") while he was a third grade student at Yeshiva Beth Mikroh, located at 221 Viola Road, Monsey, New York ("Yeshiva"). Plaintiff contends that Yeshiva breached its duty to protect him from harm and was negligent in the hiring, retaining and supervising of Bodenheimer. Yeshiva now moves for summary judgment, seeking dismissal of the Complaint insofar as asserted against it, on the ground that it lacked actual or constructive notice of Bodenheimer's alleged abusive propensities and conduct.
"Although an employer cannot be held vicariously liable for torts committed by an employee who is acting solely for personal motives unrelated to the furtherance of the employer's business, the employer may still be held liable under theories of negligent hiring, retention, and supervision of the employee" (McVawcd—Doe v. Columbus Ave. Elementary Sch., 225 AD3d 845, 846 [2d Dept 2024] [internal quotation marks omitted]; see Kenneth R. v. Roman Catholic Diocese of Brooklyn, 229 AD2d 159, 161 [2d Dept 1997]). "To establish a cause of action based on negligent hiring, negligent retention, or negligent supervision, it must be shown that the employer knew or should have known of the employee's propensity for the conduct [*2]which caused the injury" (Shor v. Touch—N—Go Farms, Inc., 89 AD3d 830, 831 [2d Dept 2011]; see Kaul v. Brooklyn Friends Sch., 220 AD3d 936, 938 [2d Dept 2023]) and that there exists a "connection between the defendant's negligence ... and the plaintiff's injuries" (Roe v. Domestic & Foreign Missionary Socy. of the Prot. Episcopal Church, 198 AD3d 698, 701 [2d Dept 2021]). "The employer's negligence lies in having placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had the employer taken reasonable care in making decisions respecting the hiring, ... retention, or supervision of the employee" (McVawcd—Doe v. Columbus Ave. Elementary Sch., 225 AD3d at 846—847 [alterations and internal quotation marks omitted]).
Moreover, "[a] school has a duty to exercise the same degree of care toward its students as would a reasonably prudent parent and will be held liable for foreseeable injuries proximately related to the absence of adequate supervision. The duty owed derives from the simple fact that a school, in assuming physical custody and control over its students, effectively takes the place of parents and guardians" (J.B. v. Monroe—Woodbury Cent. Sch. Dist., 224 AD3d 722, 723 [2d Dept 2024] [citations and internal quotation marks omitted]). "The standard for determining whether the school has breached its duty is to compare the school's supervision and protection to that of a parent of ordinary prudence placed in the same situation and armed with the same information" (McVawcd—Doe v. Columbus Ave. Elementary Sch., 225 AD3d at 847 [internal quotation marks omitted]). "Where the complaint alleges negligent supervision due to injuries related to an individual's intentional acts, the plaintiff generally must allege that the [school] knew or should have known of the individual's propensity to engage in such conduct, such that the individual's acts could be anticipated or were foreseeable" (Kwitko v. Camp Shane, Inc., 224 AD3d 895, 896 [2d Dept 2025] [internal quotation marks omitted]). Therefore, "[a]ctual or constructive notice to the school of prior similar conduct generally is required" (Burdo v. Cold Spring Harbor Cent. School Dist., 219 AD3d 1481, 1482 [2d Dept 2023] [internal quotation marks omitted]). However, "[t]he adequacy of a school's supervision of its students is generally a question left to the trier of fact to resolve, as is the question of whether inadequate supervision was the proximate cause of the plaintiff's injury" (Fleming v. City of New York, 221 AD3d 785, 786 [2d Dept 2023] [internal quotation marks omitted]).
It is unrefuted that Plaintiff never complained to anyone about the alleged abuse while attending Yeshiva. In fact, Plaintiff testified that he had no memory of the alleged incidents of abuse prior to experiencing what he calls an intrusive memory four years later, remembering four separate incidents of abuse over the eleven month period. Plaintiff further testified that he was not aware of anyone else being sexually abused by Bodenheimer during the time he was allegedly sexually assaulted. It is also undisputed that Bodenheimer was the Dean of the Yeshiva during the time of the alleged abuse. At first glance, it appears Yeshiva has demonstrated that it lacked the requisite notice or knowledge of the alleged abuse to hold them vicariously liable, but a review of the particulars in this case leads this Court to a different determination.
New York courts have held that the rule against vicarious liability in discrimination cases does not bar recovery against an employer where the harasser is its highest-ranking employee (Loughry v Lincoln First Bank, 67 NY2d 369 [1986]). This Court must decide whether New York's rule against vicarious liability in abuse cases bars recovery against an employer where, as here, the harasser is its highest-ranking employee. The Court finds it does not. The employer may be held directly liable for acts of discrimination perpetrated by a high-level managerial employee. In reaching this determination, the Court has considered the purposes of the [*3]acquiescence or condonation requirement and the manner in which notice of the harassment would be given to the corporate employer in the usual case. Under New York law, where the complainant is harassed by a low-level supervisor or a co-employee, the complainant is required to establish only that upper-level supervisors had knowledge of the conduct and ignored it; if so, the harassment will be imputed to the corporate employer and will result in imposition of direct liability. However, there is no opportunity to make a complaint to upper-level management where the harasser is the highest-ranking supervisor. There is no logical reason why the abusive conduct of a Dean of a Yeshiva cannot be imputed to the Yeshiva.
The analogy is not precise, but an instructive comparison can be made to those cases in which a court assesses punitive damages against a corporate employer for the malicious acts of its employee. Such damages may be assessed where "management has authorized, participated in, consented to or ratified the conduct" (Loughry v. Lincoln First Bank, 67 NY2d 369, 378 [1986]). Participation by a "superior officer" in the course of his employment constitutes participation by the employer itself (Loughry v. Lincoln First Bank, supra, at 378-380). "The term 'superior officer' obviously connotes more than an agent, or 'ordinary' officer, or employee vested with some supervisory or decision-making responsibility ... [Rather, it] contemplate[s] a high level of general managerial authority in relation to the nature and operation of the employer's business" (Loughry v. Lincoln First Bank, supra, at 380). The level of responsibility of the officer within the entity need only "be sufficiently high that his participation in the wrongdoing renders the employer blameworthy, and arouses the 'institutional conscience' for corrective action" (Loughry v. Lincoln First Bank, supra, at 380-381). Here, there can be no question that Bodenheimer, the Dean of the Yeshiva, was a "superior officer" within the meaning of Loughry, thus rendering the Yeshiva liable as a "participant" in the offending conduct.
Although no New York case expressly imposes direct liability on an employer for acts of harassment perpetrated by a top manager, the case of Thoreson v. Penthouse Intl. (149 Misc 2d 150; Sup Ct New York County, 1990, mod on other grounds 179 AD2d 29, affd 80 NY2d 490, rearg denied 81 NY2d 835) supports the determination that the Yeshiva is liable. In Thoreson, the complainant alleged sexual harassment against her former employer, Penthouse International, Ltd., and its Chairman and principal shareholder, Robert Guccione. The complainant prevailed against both the corporation and the individual, based on the court's finding that "defendant Guccione utilized his employment relationship with plaintiff to coerce her to participate in sexual activity" (Thoreson v. Penthouse Intl., 149 Misc 2d 150, 157, supra). Similarly here, Bodenheimer allegedly used his title and or power as Dean of the school to coerce Plaintiff, a young child, to participate in sexual activity.
The Thoreson case must be read as supporting imposition of strict liability against a school for its Dean's harassing conduct. At bar, while it is not specifically pleaded that the Yeshiva had knowledge or acquiesced in the discriminatory conduct alleged, inasmuch as Bodenheimer was the Dean of the school and was acting in that capacity, his knowledge must be considered imputed to the Yeshiva. Accordingly, Yeshiva has failed to establish, prima facie, that it lacked notice or knowledge of the alleged abusive conduct as Bodenheimer's knowledge must be imputed to the Yeshiva. The Yeshiva similarly fails to demonstrate, prima facie, that its supervision of both Bodenheimer and the Plaintiff was not negligent (see McVawcd—Doe v. Columbus Ave. Elementary Sch., 225 AD3d at 848; Johansmeyer v. New York City Dept. of Educ., 165 AD3d 634, 636 [2d Dept 2018]).
As for Plaintiff's request for punitive damages, one category of misconduct which implicates the public interest, rendering punitive damages appropriate, is where persons in positions of power wantonly misuse their authority. Accordingly, inasmuch as sexual harassment of a minor child, by its nature, causes incalculable injury to society as well as private interests, an award of punitive damages is a particularly appropriate response. Moreover, acts of discrimination which were willfully directed at a specific individual, who was coerced into sexual activity, are precisely the sort of extreme misconduct that would justify the imposition of punitive damages even under traditional common-law principles (Thoreson v. Penthouse, 149 Misc 2d 150, supra).
Accordingly, it is hereby
ORDERED, that Motion Sequence No. 1 is DENIED; and it is further
ORDERED, that appearances are required, for purposes of a Settlement Conference, on January 9, 2025 at 9:15AM.
The foregoing constitutes the Decision & Order of the Court.
Dated: November 18, 2024
New City, New York
E N T E R:
Hon. DAVID FRIED, A.J.S.C.
STATE OF NEW YORK