Claudia **ESTEVEZ–YALCIN,** individually and as parent and natural guardian of N.M., an infant, and J.M., an infant, Plaintiffs,

v.

The **CHILDREN'S VILLAGE,** Westchester County Health Care Corporation, and Samuel Toffel, Defendants.

No. 01 Civ. 8784(JGK).

United States District Court,
S.D. New York.

Aug. 11, 2004.

David Gilman, Gilman & Schneider, New York City, for plaintiffs.

Gregory F. Meehan, General Counsel, Elizabeth T. Hill, Sr. Assistant General Counsel, Office of the General Counsel, Hawthorne, NY, for defendants.

### OPINION and ORDER

KOELTL, District Judge.

This diversity action arises out of the alleged sexual abuse of two minor children, N.M. and J.M., by defendant Samuel Toffel ("Toffel"). The children's mother, Claudia Estevez–Yalcin ("Estevez–Yalcin"), brought this action on behalf of herself and on behalf of N.M. and J.M. against Toffel, The Children's Village ("CV"), and Westchester County Health Care Corporation ("WCHCC"). Toffel was a volunteer at both WCHCC and CV at times when N.M. was a patient at each of the institutions.

The Amended Complaint asserts nine claims for relief against the defendants. WCHCC is named only in the fifth claim for relief, which asserts that WCHCC and CV are liable, jointly and severally, for negligently hiring, retaining, and supervising Toffel. In their opposition papers to the current motion, the plaintiffs contend that they have also fairly asserted a claim for negligent misrepresentation against WCHCC in connection with Toffel's transfer from WCHCC to CV as a volunteer. CV asserts a cross-claim against WCHCC for contribution and indemnity.

WCHCC moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment on all claims pending against it. The plaintiffs and CV both oppose the motion. As part of their opposition to the motion, the plaintiffs and CV move pursuant to Rule 56(f) for additional discovery.

I

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Services Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's

task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come

forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993); *see also Scotto v. Almenas,* 143 F.3d 105, 114–15 (2d Cir. 1998) (collecting cases).

## II

Unless otherwise noted, the following facts are not in dispute. WCHCC is a public benefit corporation created in 1977 under the New York State Public Authorities Law. (WCHCC's Rule 56.1 St. ¶ 1; Pl.'s Resp. 56.1 St. ¶ 1; CV's Resp. 56.1 St. ¶ 1.) CV is a New York not-for-profit corporation located in Dobbs Ferry, New York, that provides residential treatment and rehabilitation programs for male juveniles with psychological problems. (WCHCC's Rule 56.1 St. ¶ 2; Pl.'s Resp. 56.1 St. ¶ 2; CV's Resp. 56.1 St. ¶ 2.) N.M. and J.M. are brothers, and they were born on December 15, 1985 and March 14, 1993, respectively. (WCHCC's Rule 56.1 St. ¶¶ 3, 6; Pl.'s Resp. 56.1 St. ¶¶ 3, 6; CV's Resp. 56.1 St. ¶¶ 3, 6.) N.M. and J.M. currently reside in Florida, but both resided in New York when the majority of the alleged injuries occurred. (*Id.*) Estevez–Yalcin is the mother of N.M. and J.M., and she also currently resides in Florida, although she resided in New York when the majority of the alleged injuries occurred.[1]

---

1. Estevez–Yalcin is no longer a plaintiff in the action against WCHCC because she failed to file a timely Notice of Claim against WCHCC. (WCHCC's Rule 56.1 St. ¶ 7; Pl.'s Resp. 56.1 St. ¶ 7; CV's Resp. 56.1 St. ¶ 7.) Estevez–Yalcin has appealed the order of the New York State Supreme Court denying her petition to file a late Notice of Claim, and that

appeal is still pending. At the argument of the current motion, the parties informed the Court that WCHCC has appealed that part of the order of the New York State Supreme Court granting the petition by J.M. and N.M. to file a late Notice of Claim, and that appeal is also still pending.

(WCHCC's Rule 56.1 St. ¶ 7; Pl.'s Resp. 56.1 St. ¶ 7; CV's Resp. 56.1 St. ¶ 7.)

From February 11, 1997 to June 30, 1997, N.M. was an in-patient at WCHCC's Psychiatric Institute. (WCHCC's Rule 56.1 St. ¶ 4; Pl.'s Resp. 56.1 St. ¶ 4; CV's Resp. 56.1 St. ¶ 4.) From June 30, 1997 to August 27, 1998 and from October 29, 1998 to June 25, 1999, N.M. was a resident at CV. (WCHCC's Rule 56.1 St. ¶ 5; Pl.'s Resp. 56.1 St. ¶ 5; CV's Resp. 56.1 St. ¶ 5.) J.M. was never a patient at WCHCC and was never a resident at CV. (WCHCC's Rule 56.1 St. ¶ 6; Pl.'s Resp. 56.1 St. ¶ 6; CV's Resp. 56.1 St. ¶ 6.)

N.M. was an in-patient on the pediatric ward at WCHCC from February 11, 1997 to June 30, 1997. (WCHCC's Rule 56.1 St. ¶ 18; Pl.'s Resp. 56.1 St. ¶ 18; CV's Resp. 56.1 St. ¶ 18.) Toffel was a volunteer at WCHCC from approximately January 24, 1997 until the end of December 1997. (WCHCC's Rule 56.1 St. ¶ 19; Pl.'s Resp. 56.1 St. ¶ 19; CV's Resp. 56.1 St. ¶ 19.) WCHCC concedes that it did not do a background check on Toffel before it hired him as a volunteer. (WCHCC's Response to Interrogatories attached as Ex. N to Pl.'s Resp. Rule 56.1 St., at 1, 4.) WCHCC contends that Toffel was trained as a volunteer by two recreational therapists on staff at WCHCC and that Toffel was rarely, if ever, left alone with patients. (WCHCC's Rule 56.1 St. ¶ 20.) The plaintiffs, however, contend that Toffel was neither trained nor supervised at WCHCC, and that Toffel was left alone with N.M. for substantial periods of time. (Pl.'s Resp. 56.1 St. ¶ 20.)

N.M. testified that while at WCHCC he was alone with Toffel on three occasions either in the living room at WCHCC or on walks around the building. (WCHCC's Rule 56.1 St. ¶ 22; Pl.'s Resp. 56.1 St. ¶ 22; CV's Resp. 56.1 St. ¶ 22; Deposition of N.M. attached as Ex. D to Pl.'s Resp. 56.1 St. ("N.M.Dep.") at 38, 42, 192.) On more than one occasion, Toffel periodically rubbed N.M.'s shoulder and neck while talking to N.M. (N.M. Dep. at 39–40.) On one occasion, Toffel touched N.M. on his leg at the thigh while N.M. was seated next to him at a table. (*Id.* at 40–41, 193.) During at least one of the walks outside the building, Toffel rubbed N.M. on the shoulder. (*Id.* at 42–43.) N.M. did not tell anyone about the three incidents of physical contact he had with Toffel at WCHCC. (WCHCC Rule 56.1 St. ¶ 22; Pl.'s Resp. Rule 56.1 St. ¶ 22.) N.M. testified that while he was at WCHCC he "didn't really know [Toffel]," and that Toffel "was like a counselor that I had to see...." (N.M. Dep. at 39.)

On June 26, 1997, Estevez–Yalcin signed a Voluntary Placement Agreement transferring custody and care of N.M. to the Commissioner of Social Services of the City of New York. (WCHCC's Rule 56.1 St. ¶ 25; Pl.'s Resp. 56.1 St. ¶ 25; CV's Resp. 56.1 St. ¶ 25.) On June 30, 1997, N.M. was discharged from WCHCC and delivered into the care of a case worker for the New York City Administration for Social Services. (WCHCC's Rule 56.1 St. ¶ 26; Pl.'s Resp. 56.1 St. ¶ 26; CV's Resp. 56.1 St. ¶ 26.) Also on June 30, 1997, N.M. was committed to CV by the New York City Department of Social Services. (WCHCC's Rule 56.1 St. ¶ 28; Pl.'s Resp. 56.1 St. ¶ 28; CV's Resp. 56.1 St. ¶ 28.) Estevez–Yalcin testified that she met Toffel for the first time on the day that N.M. was transferred to CV, and that a WCHCC staff member who "looked like a nurse" said that Toffel was a "nice guy" who had been helping N.M. as a volunteer at WCHCC and would continue to do so at CV. (Deposition of Claudia Estevez–Yalcin attached as Ex. I to WCHCC Rule 56.1 St. ("Estevez–Yalcin Dep.") at 82–83, 181.)

On July 9, 1997, Toffel submitted an application to CV for a position as a volun-

teer; none of the references on the application are people employed at WCHCC. (WCHCC's Rule 56.1 St. ¶ 31; Pl.'s Resp. 56.1 St. ¶ 31; CV's Resp. 56.1 St. ¶ 31.) There is no evidence in the record that CV sought from WCHCC, or that WCHCC actually provided, a reference or recommendation for Toffel as part of his application to be a volunteer at CV. (WCHCC's Rule 56.1 St. ¶¶ 29–33; Pl.'s Resp. 56.1 St. ¶¶ 29–33; CV's Resp. 56.1 St. ¶ 29–33.) However, Estevez–Yalcin testified that when she and N.M. arrived at CV, a CV staff member informed her that Toffel was a volunteer who would be working with N.M. and that Toffel had been "recommended from" WCHCC. (WCHCC's Rule 56.1 St. ¶ 34; Pl.'s Resp. 56.1 St. ¶ 34; Estevez–Yalcin Dep. at 178.) Toffel was discharged by WCHCC as a volunteer in December 1997 because he contacted a parent, conduct that constituted a breach of patient confidentiality under WCHCC rules. (Deposition of Maribeth Abrenica dated Sept. 29, 2003 attached as Ex. A to Affirmation of Barbara F. Kukowski dated Nov. 9, 2003, at 63–66.)

Toffel sexually molested N.M. while N.M. was a resident at CV. (WCHCC's Rule 56.1 St. ¶ 13; Pl.'s Resp. 56.1 St. ¶ 13; CV's Resp. 56.1 St. ¶ 13.) The abuse continued throughout N.M.'s stay at CV, often when N.M. went for overnight visits to Toffel's apartment. (WCHCC's Rule 56.1 St. ¶ 40; Pl.'s Resp. 56.1 St. ¶ 40; CV's Resp. 56.1 St. ¶ 40; N.M. Dep. 88, 91–94.) During this time, Toffel developed a relationship with Estevez–Yalcin, through which he gained access to J.M., whom Toffel also sexually molested. (WCHCC's Rule 56.1 St. ¶ 43; Pl.'s Resp. 56.1 St. ¶ 43; CV's Resp. 56.1 St. ¶ 43.) Toffel later pleaded guilty to an indictment charging him with sexually molesting N.M. during the time when N.M. was a resident at CV and with sexually molesting J.M. during

the time after N.M.'s release from CV. (WCHCC's Rule 56.1 St. ¶ 8; Pl.'s Resp. 56.1 St. ¶ 8; CV's Resp. 56.1 St. ¶ 8.)

## III

WCHCC first moves for summary judgment on the plaintiffs' negligent hiring, retention, and supervision claims. The plaintiffs claim that WCHCC's alleged negligence in hiring, retaining, and supervising Toffel renders WCHCC liable for the injuries that Toffel allegedly inflicted on N.M. at WCHCC, as well as for Toffel's sexual abuse of N.M. and J.M. after N.M. was transferred to CV. The plaintiffs do not assert that WCHCC is liable for Toffel's conduct under theories of respondeat superior or vicarious liability. Rather, the plaintiffs assert that WCHCC is liable, jointly and severally with CV, for negligently hiring, retaining, and supervising Toffel.[2] *See Kenneth R. v. Roman Catholic Diocese of Brooklyn,* 229 A.D.2d 159, 654 N.Y.S.2d 791, 793 (2d Dep't 1997) ("In instances where an employer cannot be held vicariously liable for its employee's torts, the employer can still be held liable under theories of negligent hiring, negligent retention, and negligent supervision.")

However, a necessary element of causes of action for negligent hiring, retention, and supervision "is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Kenneth R.,* 654 N.Y.S.2d at 793–94 (collecting cases); *see also Gomez v. City of New York,* 304 A.D.2d 374, 758 N.Y.S.2d 298, 299 (1st Dep't 2003); *Oliva v. City of New York,* 297 A.D.2d 789, 748 N.Y.S.2d 164, 166 (2d Dep't 2002). "There is no common-law duty to institute specific procedures for hiring employees unless the employer knows of facts that would lead a reason-

2. The parties agree that New York law governs this action.

ably prudent person to investigate the prospective employee." *Kenneth R.*, 654 N.Y.S.2d at 795; *see also Doe v. Whitney*, 8 A.D.3d 610, 779 N.Y.S.2d 570, 571–72 (2d Dep't 2004) (reversing denial of summary judgment where "the plaintiffs failed to raise a triable issue of fact showing that the School was aware of facts that would have led a reasonably prudent person to further investigate [the defendant]"). "An employer is under no duty to inquire as to whether an employee has been convicted of crimes in the past. Liability will attach on such a claim only when the employer knew or should have known of the employee's violent propensities." *Yeboah v. Snapple, Inc.*, 286 A.D.2d 204, 729 N.Y.S.2d 32, 33 (1st Dep't 2001); *see also Day v. J. Vlachos Hellenic Service Station*, 2 A.D.3d 482, 767 N.Y.S.2d 893, 893 (2d Dep't 2003); *T.W. v. City of New York*, 286 A.D.2d 243, 729 N.Y.S.2d 96, 97–98 (1st Dep't 2001) ("[A]n employer has a duty to investigate a prospective employee when it knows of facts that would lead a reasonably prudent person to investigate that prospective employee."). Therefore, "recovery on a negligent hiring and retention theory requires a showing that the employer was on notice of the relevant tortious propensities of the wrongdoing employee." *Gomez*, 758 N.Y.S.2d at 299.

■ In this case, WCHCC concedes that it did no background check on Toffel before it hired him as a volunteer. However, without some evidence that WCHCC knew or should have known that Toffel posed a risk of injury to children, WCHCC's failure to investigate Toffel further was not negligent. *See, e.g., Gomez*, 758 N.Y.S.2d at 298 (affirming summary judgment dismissing complaint for negligent hiring and retention where defendants failed to submit evidence that the moving defendants had knowledge of the relevant tortious propensities of the wrongdoing employee); *Oliva*, 748 N.Y.S.2d at 166 (reversing denial of sum-

mary judgment on negligent hiring claim where defendant Police Athletic League did not know or have reason to know of youth counselor's propensity to cause plaintiff's injury).

Moreover, the plaintiffs have not shown that WCHCC would have discovered anything indicating Toffel's propensity to engage in the alleged tortious conduct had WCHCC actually carried out a background check on him. *See Murray v. Research Found. of State Univ. of N.Y.*, 283 A.D.2d 995, 723 N.Y.S.2d 805, 807 (4th Dep't 2001) ("Contrary to plaintiff's contention, there is no evidence in the record that a routine background check would have revealed that [the defendant employee] had a propensity to harm children."); *Koran I. v. New York City Bd. of Educ.*, 256 A.D.2d 189, 683 N.Y.S.2d 228, 230 (1st Dep't 1998) ("Whether or not the principal could have been more thorough in checking [the abuser's] background, his actions do not support a claim of negligent hiring because a routine background check would not have revealed his propensity to molest minors."). No reasonable jury could find that, at the time WCHCC hired Toffel, WCHCC knew or should have known that Toffel had a propensity for the injurious conduct alleged in this case or that a background check would have revealed such a propensity. Therefore, no reasonable jury could find that WCHCC was negligent in hiring Toffel as a volunteer, and summary judgment should be granted to WCHCC on the plaintiffs' negligent hiring claim.

■ The plaintiffs contend that WCHCC was sufficiently on notice of Toffel's dangerous propensities after Toffel began working as a volunteer at WCHCC, such that it should be liable for negligent retention or supervision of Toffel. The plaintiffs maintain that WCHCC knew that Toffel was someone who flouted the rules. They note that on at least one occasion

Toffel was told by a WCHCC staff member to engage in recreation with particular children but that he did so with entirely different children. (Pl. Mem. Opp. at 10.) They also contend that someone at WCHCC should have seen Toffel touch N.M. on the shoulders and neck, physical contact that could not have been hidden beneath a table, as when Toffel allegedly touched N.M.'s leg. However, none of this alleged conduct was sufficient to put WCHCC on notice that Toffel had the propensity to engage in the injurious conduct alleged in this case. The fact that Toffel on one occasion played with children other than those with whom a staff member had told him to play would not put a reasonable person on notice that Toffel posed a danger of sexual assault or battery of children. Moreover, N.M. testified that he never told anyone about the physical contact between him and Toffel at WCHCC, and there is no indication in the record that anyone saw, or should have seen, that physical contact. *See Gomez,* 758 N.Y.S.2d at 299–300. No reasonable jury could conclude based on the record in this case that WCHCC knew or should have known facts that would lead a reasonable person to suspect that Toffel posed a risk to children. Therefore, summary judgment should be granted in favor of WCHCC on the plaintiffs' negligent retention and supervision claim. *See Murray,* 723 N.Y.S.2d at 807 (affirming summary judgment dismissing complaint against employer for negligent retention of employee where the employer neither knew nor had reason to know that the employee posed a risk to children).

The plaintiffs contend that WCHCC should be held to a higher standard of care because WCHCC had children in its care. The existence of a heightened duty would not change the outcome in this case, however, because the injuries allegedly incurred by N.M. were not reasonably foreseeable by WCHCC. *See N.X. v. Cabrini Med. Center,* 280 A.D.2d 34, 719 N.Y.S.2d 60, 66 (1st Dep't 2001) ("[W]hether there is a heightened duty or not, liability may not ensue unless it can be said that the harm was foreseeable.") The parties agree that any injury N.M. suffered while at WCHCC resulted when Toffel allegedly touched N.M. on his neck, shoulders, and thigh.[3] For the reasons explained above, Toffel's conduct was not reasonably foreseeable by WCHCC. There is nothing in the record to suggest that WCHCC knew or should have known that Toffel had a propensity to engage in such conduct. For this reason as well, therefore, WCHCC is entitled to summary judgment on the claims of negligent hiring, retention, and supervision. *See N.X.,* 719 N.Y.S.2d at 64–65 ("[A] mere possibility of improper conduct is insufficient to impose liability since, historically, liability for negligence has been determined by what is probable, not merely by what is possible.... Here, the possibility that a surgical resident with no history of sexual misconduct would enter a surgical recovery room and assault a patient is too remote to be considered legally foreseeable."); *see also Cornell v. State of New York,* 60 A.D.2d 714, 401 N.Y.S.2d 107, 108 (3d Dep't 1977) (affirming dismissal of negligence claim against state after trial where sexual assault on child by attendant

3. The parties dispute whether Toffel's physical contact with N.M. at WCHCC constituted sexual abuse. The plaintiffs maintain that Toffel touched N.M. on his neck, shoulders, and thigh in a "familiar" and "sexualized" way. WCHCC, however, contends that, as a matter of New York law, such contact does not amount to sexual abuse. However, it is not necessary to decide whether Toffel's conduct constituted sexual abuse or no injury at all, because the unconsented physical contact between Toffel and N.M. was not reasonably foreseeable.

at state hospital was not reasonably foreseeable where state neither knew nor should have known of attendant's dangerous propensity), *aff'd*, 46 N.Y.2d 1032, 416 N.Y.S.2d 542, 389 N.E.2d 1064 (1979).

■ The plaintiffs' claims for negligent hiring, retention, and supervision also cannot provide a basis for liability against WCHCC for the injuries suffered by N.M. and J.M. after N.M. left WCHCC. It is undisputed that Toffel sexually abused N.M., and then J.M. as well, after N.M. had been transferred to CV. However, the injuries caused by Toffel at CV were not proximately caused by any negligent hiring, retention, or supervision by WCHCC. Even though N.M. first met Toffel at WCHCC, Toffel's abuse of N.M. at CV was outside the scope of Toffel's employment with WCHCC. The abuse occurred while N.M. was in the custody of CV and while Toffel was under CV's supervision, and primarily during N.M.'s overnight visits to Toffel's apartment. Toffel's abuse of J.M. occurred after Toffel developed a relationship with Estevez–Yalcin at CV in such a way that he was able to gain access to J.M. Because of the intervening independent acts of CV, Estevez–Yalcin, and Toffel, as well as the separation in time and place, Toffel's abuse of N.M. and J.M. following N.M.'s departure from WCHCC could not have been proximately caused by any negligence by WCHCC in its hiring, retention, and supervision of Toffel. *See Anonymous v. Dobbs Ferry Union Free School*, 290 A.D.2d 464, 736 N.Y.S.2d 117, 118 (2d Dep't 2002) (reversing denial of summary judgment on negligent hiring and supervision claims where school district, superintendent, and principal established that "any nexus between [abusive teacher's] employment at the District and his alleged sexual molestation of the infant plaintiffs was severed by time, distance, and the intervening independent actions of their parents," where parents invited teacher to attend New Year's Eve party and then to

stay overnight in their home); *Cardona v. Cruz*, 271 A.D.2d 221, 705 N.Y.S.2d 368, 369 (1st Dep't 2000) ("As the officer was not acting within the scope of his employment or under the City's control, any alleged deficiency in its hiring or training procedures could not have proximately caused plaintiff's injuries."); *Koran I.*, 683 N.Y.S.2d at 230 ("Here, though it happened that plaintiff first met [his abuser] through the school, plaintiff's personal encounters with his abuser were not set up through school channels, and occurred in [the abuser's] apartment after his volunteer work at the school had ceased. Accordingly, defendant cannot be held liable because any nexus between [the abuser's] volunteer activities at the school and his assault upon plaintiff was severed by time, distance and [the abuser's] intervening independent actions." (internal citations omitted)); *Lemp v. Lewis*, 226 A.D.2d 907, 641 N.Y.S.2d 158, 159 (3d Dep't 1996) (tavern's negligent hiring of bouncer was not proximate cause of plaintiff's injuries where bouncer punched plaintiff 20 miles from bar, 30 minutes after bouncer left bar, and when bouncer was no longer within scope of his employment or under bar's supervision and control).

### IV

WCHCC also moves for summary judgment on the plaintiffs' negligent misrepresentation claim. This claim is not set forth explicitly in the Amended Complaint, but the plaintiffs contend that it can fairly be inferred from the factual allegations in the Amended Complaint. The plaintiffs contend that, in granting Toffel access to both N.M. and J.M., Estevez–Yalcin justifiably relied on WCHCC's alleged misrepresentation that Toffel was a safe and commendable person.

To prevail on a claim of negligent misrepresentation, "a plaintiff must establish

that, because of some special relationship with the defendant which generally implies a closer degree of trust than the ordinary buyer-seller relationship, the law imposes on that defendant a duty to use reasonable care to impart correct information, that the information is false or incorrect, and that the plaintiff reasonably relied upon the information given." *Pappas v. Harrow Stores, Inc.*, 140 A.D.2d 501, 528 N.Y.S.2d 404, 407 (2d Dep't 1988). The negligent statement upon which the plaintiff relies "must also be a proximate cause of the injury for which he or she seeks recovery." *Id.*

The New York Court of Appeals has explained that

> the determination of whether defendant, by negligent misrepresentation, breached a duty to plaintiff and proximately caused the injury turns on the reasonableness of both parties' conduct. Defendant must have imparted the information under circumstances and in such a way that it would be reasonable to believe plaintiff will rely upon it; plaintiff must rely upon it in the reasonable belief that such reliance is warranted.

*Heard v. City of New York*, 82 N.Y.2d 66, 603 N.Y.S.2d 414, 623 N.E.2d 541, 546 (1993). A prima facie case for negligent misrepresentation can be made out, for example, "when one familiar with a hazard offers direct assurances of safety to one who is unfamiliar with the hazard and who foreseeably relies upon those assurances." *Id.* at 545. It is well established, however, that "[t]he mere recommendation of a person for potential employment is not a proper basis for asserting a claim of negligence where another party is responsible for the actual hiring." *Cohen v. Wales*, 133 A.D.2d 94, 518 N.Y.S.2d 633, 634 (2d Dep't 1987); *see also Jurgens v. Poling Transp. Corp.*, 113 F.Supp.2d 388, 398 (E.D.N.Y.2000); *Koran I.*, 683 N.Y.S.2d at 230.

■ On the record in this case, the plaintiffs cannot prevail on a negligent misrepresentation claim. Even assuming a special relationship between the plaintiffs and WCHCC, there is no evidence to support a finding that WCHCC made a negligent misrepresentation, or that WCHCC knew that the plaintiffs intended to rely upon its representations concerning Toffel, or that the plaintiffs reliance on the representations was reasonable.

For the reasons explained above, WCHCC was not on notice, at the time it made any alleged misrepresentations, that Toffel had a propensity for the injurious conduct alleged in this case. Because WCHCC did not know, and did not have reason to know, that Toffel posed any risk of danger to the plaintiffs, WCHCC's words and conduct suggesting that Toffel was safe and commendable could not have constituted a negligent misrepresentation. As explained above, WCHCC was under no obligation to investigate Toffel any further than it did, and even if it had done so, there is no evidence that WCHCC would have learned any facts that would have put it on notice concerning Toffel's dangerous propensities. For these reasons, no reasonable jury could find that WCHCC made a statement to the plaintiffs that it knew or should have known was false or incorrect. Moreover, the fact that WCHCC employed Toffel as a volunteer and may have encouraged his interaction with N.M. is insufficient to support a finding of liability on the part of WCHCC for the injuries inflicted by Toffel, because a mere recommendation does not support a finding of liability. *See Koran I.*, 683 N.Y.S.2d at 230 ("[P]laintiff seeks to hold the Board vicariously liable for the alleged negligence of plaintiff's teachers and school principal in recommending [an abusive volunteer], availing themselves of his volunteer services, and encouraging the relationship between him and plaintiff. This cause of

action must fail."); *see also Cohen,* 518 N.Y.S.2d at 634.

The evidence also would not support a finding that WCHCC knew that any representations concerning Toffel would be used by Estevez–Yalcin in deciding to give Toffel access to N.M. and J.M. Nor would the evidence support a finding that any reliance on Estevez–Yalcin's part was reasonable. Estevez–Yalcin testified that someone from WCHCC told her on the day that N.M. was transferred from WCHCC to CV that Toffel was a "nice guy" and that he had been helping N.M. at WCHCC and would continue to do so at CV.[4] Although these statements were allegedly made on June 30, 1997, the day that N.M. was discharged from WCHCC, Toffel did not apply to become a volunteer at CV until July 9, 1997. Moreover, it is clear from Estevez–Yalcin's testimony that the statements, if indeed they were made, were made by way of introducing Estevez–Yalcin to Toffel, not in order to induce her reliance on the statements in deciding whether to give Toffel access to her sons. (*See* Estevez–Yalcin Dep. at 82–83.) For the same reason, any reliance by Estevez–Yalcin on these statements would not have been reasonable. Estevez–Yalcin also claims that she relied on the fact that a reputable institution like WCHCC had employed Toffel as a volunteer in deciding to give Toffel access to her sons. But there is no evidence that WCHCC employed Toffel as a volunteer knowing that Estevez–Yalcin would rely on that fact in making the particular decision she made in giving Toffel access to her sons. For the same reason, any reliance by Estevez–Yalcin on that fact would have been unreasonable. Because there is no evidence that WCHCC's words or conduct actually constituted a misrepresentation, or that its

words and conduct could reasonably be construed as inducing Estevez–Yalcin's reasonable reliance in granting Toffel access to N.M. and J.M., summary judgment must be granted to WCHCC on the plaintiffs' negligent misrepresentation claim.

Furthermore, for the reasons explained above, the plaintiffs could not succeed on their negligent misrepresentation claim because they cannot establish that the alleged misrepresentations proximately caused their injuries. *See Hayes v. Baker,* 232 A.D.2d 371, 648 N.Y.S.2d 158, 159 (2d Dep't 1996) (town not liable on negligent misrepresentation claim for injuries caused to child by babysitter referred by town's community service referral program because no showing of a special relationship and no showing that injuries were proximately caused by alleged misstatement).

### V

Because WCHCC cannot be held liable for the injuries suffered by the plaintiffs, WCHCC must also be granted summary judgment on CV's cross-claim for contribution or indemnity. *See Patterson v. New York City Transit Auth.,* 5 A.D.3d 454, 773 N.Y.S.2d 417, 419–20 (2d Dep't 2004); *Cochrane v. Warwick Assocs., Inc.,* 282 A.D.2d 567, 723 N.Y.S.2d 506, 508 (2d Dep't 2001).

### VI

The plaintiffs and CV move pursuant to Rule 56(f) to request that the Court defer deciding WCHCC's summary judgment motion pending further discovery. The request is denied.

It is well-established that a party resisting summary judgment on the grounds that the party needs additional

---

4. WCHCC maintains that this testimony contains inadmissible hearsay, but the issue need not be decided because, even if admissible, the testimony would not support a claim for negligent misrepresentation.

discovery must submit an affidavit showing (1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts. *See Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999); *Cooney v. Consolidated Edison*, 220 F.Supp.2d 241, 247–48 (S.D.N.Y.2002), *aff'd*, 63 Fed.Appx. 579, 2003 WL 21105351 (2d Cir.2003). Neither the plaintiffs nor CV indicate any facts that, if obtained, would create a genuine issue of material fact concerning WCHCC's liability to the plaintiffs. The issues that the plaintiffs and CV seek to pursue further concerning Toffel's hiring, supervision, and subsequent discharge from WCHCC have been fully developed on the existing record.[5] WCHCC, for example, concedes that it did no background check at all on Toffel, so further discovery on that issue is unnecessary. The plaintiffs merely speculate that further discovery concerning Toffel's retention and supervision at WCHCC would create a genuine issue of material fact with respect to WCHCC's knowledge of Toffel's dangerous propensities. CV's request for further information concerning Toffel's discharge from WCHCC is equally unsupported and conclusory. *See Smith v. Keane*, No. 96 Civ. 1629, 1998 WL 146225, at *7 (S.D.N.Y. Mar. 25, 1998) ("Rule 56(f) is not a device for a fishing expedition or a means to avoid summary judgment on the mere hope that further evidence will develop."). Therefore, the application by the plaintiffs and CV to deny the motion by WCHCC or to stay it pending further discovery is denied.

## CONCLUSION

Defendant WCHCC's motion for summary judgment dismissing the claims against it is granted.

**SO ORDERED.**

---

5. In a scheduling order dated June 2, 2003, Magistrate Judge Eaton required that all fact discovery in this case be completed by September 19, 2003. (Ex. C to affidavit of John D. Katz, Esq., dated Oct. 31, 2003 ("Katz Aff.").) In an order dated September 9, 2003, Magistrate Judge Eaton extended the deadline to September 30, 2003, to permit the plaintiffs and CV to depose Maribeth Abrenica, but he declined the plaintiffs' and CV's request to extend the deadline by sixty days and to allow about fifteen further depositions. The Magistrate Judge also set a briefing schedule for WCHCC's motion for summary judgment and stayed discovery pending the disposition of that motion. (Ex. E to Katz Aff.) In an order dated October 8, 2003, Magistrate Judge Eaton denied a further request by the plaintiffs and CV for additional discovery and adhered to the previous schedule for WCHCC's motion for summary judgment. (Ex. F. to Katz Aff.)